RECORD NO. 13-6358

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

_____

MACEO SPATES,

*Petitioner-Appellee,*

v.

HAROLD W. CLARKE, DIRECTOR,
VA DEPARTMENT OF CORRECTIONS,

*Respondent-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT NORFOLK

_____

**RESPONSE BRIEF OF PETITIONER-APPELLEE
MACEO SPATES**

_____

Neal L. Walters, Esq. (VSB No. 32048)
SCOTT KRONER, P.L.C.
418 East Water Street
Post Office Box 2737
Charlottesville, VA 22902
(434) 296-2161
nwalters@scottkroner.com

*Counsel for Appellee*                     July 16, 2013

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF SUBJECT MATTER JURISDICTION
AND BASIS FOR APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    I.    THE DISTRICT COURT PROPERLY CONSIDERED THE TRANSCRIPT OF THE FEBRUARY 12 *FARETTA* INQUIRY BECAUSE IT WAS NOT NEW EVIDENCE, BUT INSTEAD MERELY DOCUMENTED EVIDENCE THAT WAS ACTU-ALLY BEFORE THE STATE COURT . . . . . . . . . . . . . . . . 16

    II.    THE DISTRICT COURT CORRECTLY FOUND THAT THE DECISION OF THE VIRGINIA COURT OF APPEALS WAS CONTRARY TO CLEARLY ESTABLISHED LAW . . . . . 23

        A.    Supreme Court precedent clearly establishes the require-ment of a probing, pre-waiver inquiry that informs the defendant of the risks he faces in self-representation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        B.    The evidence shows that the *Faretta* inquiry in the present case was inadequate and that Spates did not knowingly and voluntarily waive his right to counsel. . . . . . . . . . . . . 26

        C.    The decision of the Virginia Court of Appeals that the *Faretta* inquiry was adequate, based solely upon the waiver form, was contrary to and an unreasonable application of clearly established Supreme Court precedent. . . . . . . . 37

    III.    THE DISTRICT COURT PROPERLY CONSULTED LOWER COURT PRECEDENT NOT TO DETERMINE WHAT CONSTI-

TUTED CLEAR FEDERAL LAW, BUT INSTEAD TO DETER-
MINE WHAT CONSTITUTED A DEVIATION FROM THAT
CLEAR LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

# TABLE OF AUTHORITIES

## CASES

*Alongi v. Ricci*, 367 Fed. Appx. 341 (3d Cir. 2010) . . . . . . . . . . . . . . . . 15, 41, 43

*Argersinger v. Hamlin*, 407 U.S. 25 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Batchelor v. Cain*, 2010 U.S. Dist. LEXIS 80497 (W.D. La. 2010) . . . . . . . . . . . 14

*Batson v. Kentucky*, 476 U.S. 79 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cullen v. Pinholster*, ___ U.S. ___,131 S. Ct. 1388 (2011) . . . . . . . . . . . . . . 17-22

*Early v. Packer*, 537 U.S. 3 (2002) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Edwards v. Commonwealth*, 462 S.E.2d 566 (Va. Ct. App. 1995) . . . . . . . . . . . . 40

*Faretta v. California*, 422 U.S. 806 (1975) . . 13-15, 21, 23, 24, 29-32, 36, 37, 40, 41

*Gideon v. Wainwright*, 372 U.S. 335 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gray v. Branker*, 529 F.3d 220 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Green v. French*, 143 F.3d 865 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Harrington v. Richter*, ___ U.S. ___, 130 S. Ct. 770 (2011) . . . . . . . . . . 13, 38, 40

*Higgins v. Cain*, ___ F.3d ___, 2013 U.S. App. LEXIS 12427 (5th Cir. June 18, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-21

*Holland v. Tucker*, 854 F. Supp. 2d 1229 (S.D. Fla. 2012) . . . . . . . . . . . . . . . . . 14

*Iowa v. Tovar*, 541 U.S. 77 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 37

*Jamerson v. Runnels*, 713 F.3d 1218 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . 20-22

*Jones v. Steele*, 660 F. Supp. 2d 1059 (E.D. Mo. 2009) . . . . . . . . . . . . . . . . 15, 43

*Lemke v. Commonwealth*, 241 S.E.2d 789 (1978). . . . . . . . . . . . . . . . . . . . . . . 40

*Mabe v. Whitener*, 2013 U.S. Dist. LEXIS 16648 (M.D.N.C.), *appeal dismissed*, 2013 U.S. App. LEXIS 13677 (4th Cir. N.C., July 5, 2013) . . . . . . . . . . . . . . . . . . . 14

*Marshall v. Rodgers*, ___ U.S. ___, 133 S. Ct. 1446 (2013) . . . . . . . . . . . . . . . 42

*Moore v. Haviland*, 531 F.3d 393 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Patterson v. Illinois*, 487 U.S. 285 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Scanlon v. Harkleroad*, 467 Fed. Appx. 164 (4th Cir. 2012) . . . . . . . . . . . . . . . . . 39

*Shafer v. Bowersox*, 329 F.3d 637 (8th Cir. 2003) . . . . . . . . . . . . 14, 23, 35, 41, 43

*Smith v. Grams*, 565 F.3d 1037 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . 14, 15, 43

*United States v. Frazier-El*, 204 F.3d 553 (4th Cir. 2000) . . . . . . . . . . . . . . . 13, 14

*United States v. Johnson*, 610 F.3d 1138 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . 14

*United States v. Wade*, 388 U.S. 218 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Von Moltke v. Gillies*, 332 U.S. 708 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 37

*Williams v. Taylor*, 529 U.S. 362 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . 13, 38, 39

iv

## **STATUTES**

28 U.S.C. § 2253 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12, 13, 17, 38-40

## **MISCELLANEOUS**

Fed. R. App. P. 4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 6(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

## STATEMENT OF SUBJECT MATTER JURISDICTION
## AND BASIS FOR APPELLATE JURISDICTION

### Jurisdiction in the District Court

Defendant Maceo Spates is an inmate of the Commonwealth of Virginia under sentence of the Circuit Court for the City of Virginia Beach. Spates was in custody under this sentence when he filed his petition under 28 U.S.C. § 2254. The District Court therefore had jurisdiction under 28 U.S.C. § 2254.

### Jurisdiction in the Court of Appeals

The District Court entered its judgment, disposing of all claims at issue between the parties, on August 14, 2012. The Respondent filed a motion to alter or amend pursuant to Fed. R. Civ. P. 59(e) on September 11, 2012. The motion to alter or amend was filed on the twenty-eighth day after judgment was entered and was thus timely under Fed. R. Civ. P. 59(e) (which permits such motions to be filed within twenty-eight days of the entry of judgment).

On January 17, 2013, the Respondent filed a "supplemental" motion to alter or amend the judgment seeking additional relief in the form of an extension of the deadline set in the District Court's original judgment for retrying Spates. Under Fed. R. Civ. P. 6(b)(2) the District Court is explicitly forbidden to extend the time for

1

filing a Rule 59(e) motion and it is not clear that this rule could be circumvented by the filing of a "supplemental" Rule 59(e) motion seeking additional relief not requested in the original motion. Nonetheless, any jurisdictional issue is rendered moot by the fact that the District Court subsequently granted the Respondent's motion for a stay pending appeal and thus no re-trial will take place until after a decision is rendered in this appeal.

On January 31, 2013, the District Court entered an order denying the initial Rule 59(e) motion and granting and denying in part the supplemental Rule 59(e) motion.[1] The Respondent filed a notice of appeal on February 6, 2013, which was timely as it was filed within 30 days of the entry of the order denying the Rule 59(e) motion. *See* Fed. R. App. P. 4(a)(1)(A) and (a)(4)(A)(iv).

The Respondent having timely appealed, this Court has jurisdiction pursuant to 28 U.S.C. § 2253(A).

---

[1]The order granted only the request for an extension of the deadline for retrying Spates; it denied relief on the merits.

2

## STATEMENT OF ISSUES

**I.   WHETHER THE DISTRICT COURT CORRECTLY CONCLUDED THAT A TRANSCRIPT OF THE PROCEEDINGS IN THE STATE COURT, WHICH WAS CONCEDEDLY ACCURATE AND COMPLETE, WAS NOT "NEW EVIDENCE" UNDER THE RULE IN *PINHOLSTER V. CULLEN*, EVEN THOUGH IT HAD NOT BEEN MADE PART OF THE RECORD BEFORE THE STATE APPEALS COURT**

**II.   WHETHER THE DISTRICT COURT CORRECTLY FOUND THAT THE STATE COURT'S DECISION THAT PETITIONER HAD VALIDLY WAIVED HIS RIGHT TO COUNSEL WAS CONTRARY TO LAW WHERE THE STATE TRIAL COURT FAILED TO CONDUCT EVEN A RUDIMENTARY *FARETTA* INQUIRY**

**III. WHETHER THE DISTRICT COURT PERMISSIBLY REFERRED TO LOWER FEDERAL COURT PRECEDENT NOT TO ESTABLISH THE RULE OF LAW TO BE APPLIED, BUT RATHER TO DETERMINE WHETHER THE FACTS OF THE PRESENT CASE DEMONSTRATED A VIOLATION OF THAT RULE**

3

## STATEMENT OF THE CASE

### Nature of the Proceedings

This is an appeal by the Commonwealth of Virginia from a final order of the District Court granting in part Spates's petition for habeas corpus under 28 U.S.C. § 2254 and ordering that he be retried by the Commonwealth.

### Course of Proceedings

The Petitioner adopts, as being substantially accurate, so much of the Respondent's statement of the case (Appellant's Brief at 2-6) as sets forth the procedural history of the case, excluding those statements which provide subjective commentary upon events in the case.

### Disposition Below

The District Court denied the petition in part and granted it in part, finding that the Petitioner's right to counsel had been denied and ordering that he be retried by the Commonwealth or released.

## STATEMENT OF FACTS

The Petitioner adopts, as being substantially accurate, so much of the Respondent's statement of the facts (Appellant's Brief at 6-10) as sets forth factual assertions, excluding those statements which provide subjective commentary upon the facts or are statements of opinion.[2]  In addition, the following facts, omitted from the Appellant's Statement of Facts, are incorporated.

On February 12, 2007, the Commonwealth's case against Spates was called for trial (JA 123, 136-37).  At that time Judge Shockley, to whom the case was then assigned, after hearing for the first time Spates's comments regarding representing himself, stated that "he's not going to get a continuance. . . . [T]he Commonwealth . . . is entitled to go forward with those [indictments] today. . . . We can get a jury list up, and then we'll proceed." (JA 137-38).

---

[2]For example, the Respondent includes in his "Statement of Facts" the following statement: "Spates instead sought to force another delay by discharging his second court-appointed counsel."  (Appellant's Brief at 7).  The Respondent, in violation of Fed. R. App. P. 28 and Fourth Circuit Local Rule 28(f), includes no citation to the location in the record where this "fact" may be found because, of course, it is not actually a fact but only argument of counsel.

5

After a short recess to permit Spates to speak with his attorney the court returned and Ms. Joslin, still Spates's counsel at the time, stated that Mr. Spates still desired to represent himself. (JA 139). The following dialogue then took place:

> THE COURT: You're sure about this, Mr. Spates?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: You're going to be held to the same standard as if you were an attorney. You understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You're going to be required to know when to make an objection, the basis of the objection. You're going to need to pick the jury. You're going to need to – well, you're going to need to know everything the lawyers know; and you're not going to be given any extra slack in this. You understand that?
>
> THE DEFENDANT: Yes, ma'am.

(JA 139-40).

Spates then indicated that he was not prepared to represent himself and wanted more time to prepare for trial (JA 140-41), while the Commonwealth indicated that all of its witnesses were present and it was prepared to move ahead with trial (JA 141). The court then stated that "[i]t's not going to be continued" and told Spates that the court would arrange to get his notes from his jail cell if he wanted them. (JA 142). When he continued to insist that he was not prepared Judge Shockley

6

told Spates "You do not come in here on the day of trial and tell me that you want to represent yourself and then tell me you're not prepared." (JA 142).

Both the Commonwealth and Ms. Joslin then addressed the court regarding various procedural and evidentiary complexities arising from Spates representing himself which, apparently, would make it difficult to proceed with the trial on that date (JA 142-44). The court then concluded "It's his right to do so [to represent himself]. All right. I think I'm sort of stuck here." (JA 144).

After continued back forth over evidentiary issues Judge Shockley concluded by stating:

> THE COURT: Okay, Ms. Joslin, you are relieved of your duties. If you wish to serve as stand-by counsel, that's fine. I will appoint you in that sense.
>
> Mr. Spates, you are on your own; and you may represent yourself, as is your right.

(JA 146).

The matter was then scheduled for a trial on May 7, with a hearing on April 23, 2007, for any motions that Spates wished to present, *"other than the ones [the court had] already ruled on."* (JA 34, 154).

The court then memorialized its ruling on the Spates's request to represent himself in an order entered February 14, 2007, which stated in relevant part

7

"[t]he Court granted the defense attorney's motion to withdraw for the reasons stated on the record and grants the defendant's motion to represent himself at trial. . . ." (JA 22).

On May 7 Spates's case was again called for trial. (JA 27). After reading the charges, Judge Padrick asked Spates if he was representing himself. Spates responded "[ye]s, Your Honor. I was representing myself, but I don't know. My counselor was supposed to show up today. . . I obtained counsel. I found and retained counsel." (JA 28). Judge Padrick indicated that no continuance would be given to Spates, as the Commonwealth was ready to proceed. (JA 29). Subsequently, Spates asked if he could speak to Joslin, who was present as stand-by counsel, in private. (JA 39-40). After doing so, Spates stated that he told Joslin that he did not think he could represent himself. (JA 41). Judge Padrick stated "what you've done is you've kind of put yourself in a box a little bit. . . ." (JA 42). Judge Padrick then proceeded with arraignment, asking Spates again if he was ready for trial to begin, to which Spates again responded that he was not. (JA 50).

At the conclusion of the plea hearing the court stated:

THE COURT: Any questions you want to ask me?

DEFENDANT: I mean, I don't - - like I told you, no way I can represent myself. I don't know the procedure, what to do, how to do it; so I'll be sitting here. That's it. If Ms.

8

Joslin not going to represent me or not going to wait for other counsel, there's nothing else I can do.

THE COURT: Well, like I said sir, I was not here - -

DEFENDANT: But when I signed - -

THE COURT: - - when you signed this waiver. I'm looking at the waiver you signed - -

DEFENDANT: Uh-huh.

THE COURT: - - on April 23rd where you waived your right to an attorney and you wished to proceed pro se. And I'm sure Judge Shockley went over all the ramifications with you.

DEFENDANT: No.

THE COURT: She didn't?

DEFENDANT: No, sir. I didn't know that I was signing the waiver to represent my pro se, but I – if I wanted her to represent me, she didn't have to or, you know, that I have to proceed by myself.

(JA 51-52).

## SUMMARY OF ARGUMENT

In the instant case the District Court found that the Petitioner's waiver of his right counsel at trial was not knowing and voluntary and that the Virginia Court of Appeals's decision upholding the waiver was contrary to clearly established federal law. This decision was correct and should be affirmed.

In reviewing the record regarding the waiver inquiry required by the Supreme Court's decision in *Faretta v. California*, the District Court obtained a copy of a transcript of the state court proceedings on February 12, 2007, at which the Petitioner requested leave to represent himself and at which leave was granted. This transcript revealed the scope and extent, such as it was, of the *Faretta* inquiry. ON appeal the Commonwealth, relying on *Cullen v. Pinholster*, argues that it was error for the District Court to consider the transcript because it had not been made available to the Virginia Court of Appeals. This is incorrect as *Pinholster* applies only to bar evidence adduced at later federal habeas evidentiary hearings which had not been before the state courts; it does not bar consideration of evidence that reconstructs what actually took place in the state court, even if the evidence was not before the state appellate court.

10

The requirement of a rigorous and probing inquiry which ensures that a defendant's waiver of his right to counsel at trial is knowing and voluntary is clearly established by Supreme Court precedent including the decision in *Faretta*. The inquiry in the present case was perfunctory and failed to inform the Petitioner of the significant risks that he would bear if he waived counsel. The evidence of what was stated at the February 12 hearing demonstrates that the inquiry was inadequate and the Petitioner's statements on May 7 likewise demonstrate that he was not aware of what the result of his waiving counsel would be. The evidence relied on by the Commonwealth to counter this, a pre-printed waiver form which the Petitioner signed, cannot overcome the compelling nature of the transcripts which show that the required inquiry did not take place. The state court's contrary finding was contrary to or an unreasonable application of federal law and the decision of the District Court should be affirmed.

While a federal court cannot rely on lower court precedent to determine what constitutes clearly established federal law, it is not error for such precedent to be consulted when determining whether a violation of clear Supreme Court precedent has taken place. To the extent that the District Court relied on such authority it was not in error.

11

# **ARGUMENT**

The United States District Court for the Eastern District of Virginia found that the inquiry made by the state trial court before permitting the Petitioner to represent himself was inadequate and that the decision of the Virginia Court of Appeals finding that there was no *Faretta* violation was contrary to clearly established federal law. On appeal the Commonwealth does not challenge the accuracy of the facts relied upon by the District Court, nor does it identify any authority which would indicate that the *Faretta* inquiry was sufficient. Instead, the Commonwealth argues that the District Court should not have considered the actual scope of the *Faretta* inquiry and that it should have deferred to the conclusion of the Court of Appeals despite its failure to incorporate these facts. While the extent of the deference due the state court decision is indeed substantial, the Commonwealth's argument pushes it past the breaking point. For the reasons set forth below the decision of the District Court was correct and it should be affirmed.

## Standard of Review

This Court reviews de novo a district court's application of the standards set forth in 28 U.S.C. § 2254(d) to a state court adjudication of a state prisoner's habeas petition. *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008). Under § 2254,

federal habeas relief may not be granted unless a petitioner shows that the state court's decision "was contrary to" clearly established federal law, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2). *Harrington v. Richter*, ___ U.S. ___, ___, 130 S. Ct. 770, 785 (2011).

## Clearly Established Law

The Sixth Amendment guarantees that every criminal defendant facing potential incarceration has the right to counsel at all "critical stages" of the criminal process. *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972); *United States v. Wade*, 388 U.S. 218, 223-27 (1970); *Gideon v. Wainwright*, 372 U.S. 335 (1963). The Constitution also affords, with equal importance, the right to self-representation. *Faretta v. California*, 422 U.S. 806, 821 (1975). These two rights are mutually exclusive, and invocation of one is necessarily intertwined with waiver of the other. *United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir. 2000); *Moore v. Haviland*, 531 F.3d 393, 401 (6th Cir. 2008). In *Faretta* the Court held that while a defendant has a constitutional right to self-representation, given the critical role that competent counsel plays in protecting a defendant's rights and ensuring a fair process a court is obligated to conduct a thorough inquiry before permitting a defendant to represent

13

himself. In order to be valid an "assertion of the right of self-representation . . . must be (1) clear and unequivocal, (2) knowing, intelligent and voluntary, and (3) timely." *Frazier-El*, 204 F.3d at 558 (internal citations omitted).

Both a defendant's right to counsel and his right to self-representation are "clearly established" by Supreme Court precedent for the purposes of 28 U.S.C. § 2254(d)(1). *United States v. Johnson*, 610 F.3d 1138, 1144 (9th Cir. 2010); *Moore*, 531 F.3d at 401-02; *Holland v. Tucker*, 854 F. Supp. 2d 1229, 1241 (S.D. Fla. 2012); *Batchelor v. Cain*, 2010 U.S. Dist. LEXIS 80497 at *21 (W.D. La. 2010); *see Smith v. Grams*, 565 F.3d 1037, 1044 (7th Cir. 2009); *cf. Mabe v. Whitener*, 2013 U.S. Dist. LEXIS 16648 (M.D.N.C.), *appeal dismissed*, 2013 U.S. App. LEXIS 13677 (4th Cir. N.C., July 5, 2013) (finding that defendant had not clearly exercised his right to self-representation and thus could not establish a violation of federal law as clearly established in *Faretta*).

Likewise, the minimum requirements imposed upon a trial court when conducting a *Faretta* inquiry are also clearly established for the purposes of 28 U.S.C. § 2254(d)(1). *Shafer v. Bowersox*, 329 F.3d 637, 647, 650 (8th Cir. 2003) (stating that the Supreme Court "has clearly established that the presiding court must undertake a thorough colloquy with the defendant before permitting him to proceed [pro se]," and "in *Faretta* and *Von Moltke* [the Supreme] Court clearly established inquiry and

14

warning requirements applicable to this case"); *see Smith*, 565 F.3d at 1047 (finding on federal habeas review that state appellate court's ruling that the state trial court's procedures satisfied *Faretta* was unreasonable); *Alongi v. Ricci*, 367 Fed. Appx. 341, 347-48 (3d Cir. 2010) (finding on federal habeas review that state court's inadequate *Faretta* colloquy was contrary to clearly established federal law); *Jones v. Steele*, 660 F. Supp. 2d 1059, 1071-77 (E.D. Mo. 2009) (finding that state court's determination that the defendant's waiver was not knowing and voluntary was an unreasonable application of clearly established federal law).

There are two questions in this appeal: (1) what was the actual nature and extent of the *Faretta* inquiry conducted by the state trial court, and (2) was the Virginia Court of Appeal's conclusion that the *Faretta* inquiry conducted by the trial court was adequate contrary to or an reasonable application of federal law.  The first question requires the Court to address an antecedent issue, which is what evidence may be properly considered by a federal habeas court when examining the nature and scope of the state court's *Faretta* inquiry.

15

## I. THE DISTRICT COURT PROPERLY CONSIDERED THE TRANSCRIPT OF THE FEBRUARY 12 *FARETTA* INQUIRY BECAUSE IT WAS NOT NEW EVIDENCE, BUT INSTEAD MERELY DOCUMENTED EVIDENCE THAT WAS ACTUALLY BEFORE THE STATE COURT

The starting point in any determination of whether a criminal defendant's waiver of the right to counsel was valid is a determination of the nature and scope of the inquiry conducted by the trial court prior to permitting the waiver. There were three events during the state court proceedings in this case that are critical to a resolution of the question of whether the Petitioner's right to counsel was violated. The first was a hearing on February 12, 2007, at which the issue of Spates continuing to be represented by counsel or instead representing himself was first raised. The second occurred on April 23, 2007, at which time Spates executed a waiver of counsel form. The third was immediately prior to trial on May 7, 2007, when the presiding judge made further inquiry into the waiver issue. The District Court relied on evidence of all three of these events in reaching its conclusion. While the Commonwealth does not take issue with the latter two, it does challenge on appeal the District Court's reliance on the transcript of the February 12 hearing.

16

The Commonwealth argues that consideration of the transcript of the hearing on February 12, 2007, was improper because the transcript itself had not been made a part of the record before the Virginia Court of Appeals during the state appeal. The Commonwealth pointedly fails to contest the accuracy or the import of the transcript of what transpired on February 12, 2007. Instead, in a particularly glaring triumph of form over substance, the Commonwealth argues that while the transcript is clearly *a* record of what transpired it is not part of *the* record and must therefore be ignored.

The Commonwealth bases its objection to the District Court's consideration of the transcript of the February 12 hearing on the Supreme Court's decision in *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388 (2011). In *Pinholster*, the petitioner alleged that his counsel had been ineffective during the penalty phase of his capital murder trial. On habeas review, the federal trial court conducted an evidentiary hearing. At this hearing new evidence was introduced in the form of testimony from expert witnesses who had never participated in the state court trial and had only become involved years later during the federal habeas proceedings. The Supreme Court ruled that consideration of the evidence newly adduced at the federal evidentiary hearing was barred because it was not available to the state court when it ruled on the state habeas petition. The Court held that "review under § 2254(d)(1)

17

is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* at 1398. Review under § 2254(d), the Court stated, "requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time--i.e., the record before the state court." *Id.*

The Court in *Pinholster* dealt with a factual situation where the federal habeas court held an evidentiary hearing at which entirely new evidence was gathered. Moreover, the evidence did not relate to what had transpired during the state trial, but instead was new substantive evidence relating to mitigation that had never been presented to the state courts. The Commonwealth now seeks to extend the holding in *Pinholster* to the quite different factual situation in the present case where there was no such federal hearing and no such new evidence, and seeks to use it to bar consideration of evidence of what actually transpired before the state court. This approach has been rejected by other federal courts of appeal and should be rejected by this Court as well.

The transcript of the February 12 hearing was incontrovertibly not new evidence gathered at a federal hearing after the completion of the state court proceedings. It was, in fact, a verbatim, contemporaneous record of what took place *during* the state court proceedings used by the federal court solely for the purposes

18

of determining what had transpired *during* the state court proceedings. The Court's concern in *Pinholster* was with how a state court could be said to have erred in its consideration of evidence that had *never* been before it. Such a concern is not an issue when the evidence in question is precisely what took place in the state court courtroom and was, presumably, the basis for the state court's decision.

This view of the decision in *Pinholster* has been adopted by several courts of appeals in situations almost identical to that in the present case. In *Higgins v. Cain*, ___ F.3d ___, 2013 U.S. App. LEXIS 12427 (5th Cir. June 18, 2013), the defendant's attorney failed to obtain a copy of the transcript of the voir dire and make it part of the record in the state court appeal where the defendant sought to raise claims under *Batson v. Kentucky*, 476 U.S. 79 (1986). In a subsequent federal habeas proceeding the defendant produced a copy of the voir dire transcript to support his *Batson* claims. The Fifth Circuit concluded that the transcript, even though it had not been made available to the state appellate court, was not prohibited "new evidence" under *Pinholster* and was properly considered by the federal court on habeas review. *Higgins*, 2013 U.S. App. LEXIS at *8-12.

Rather than being "new evidence," the court stated, "the voir dire transcript reconstructs testimony actually presented to the state court that originally ruled on" the *Batson* issue. *Id.* at *10. As the Fifth Circuit stated, "A common sense

19

reading of *Pinholster* leads us to this conclusion. In our view, the gravamen of that decision is effecting AEDPA's goal of promoting comity, finality, and federalism by giving state courts the first opportunity to review [a] claim, and to correct any constitutional violation in the first instance. Most significantly, nothing in *Pinholster* inherently limits this [federal] court's review to evidence that the state appellate court—as opposed to the state trial court—considered. . . . To the contrary, *Pinholster* itself precluded review only of evidence that was never revealed in *any* state court proceeding." *Id.* at *10-11 (internal citations and quotations omitted, emphasis added).

The facts in the present case are essentially indistinguishable from those in *Higgins*. Just as in *Higgins,* the Petitioner did not include a copy of the transcript of the relevant hearing in the record on appeal, and just as in *Higgins* the transcript does not contain material adduced at a later, post-state court proceeding; instead it "reconstructs testimony actually presented to the state court that originally ruled on" the *Faretta* issue.

The court in *Jamerson v. Runnels*, 713 F.3d 1218 (9th Cir. 2013), also interpreted *Pinholster* in the same fashion. In *Jamerson* the defendant introduced in a federal habeas proceeding enlarged driver's license photographs, which had not been presented during the state court proceedings, to establish the race of members

20

of the venire.  The state objected based on *Pinholster*, arguing that the photographs were new evidence not available to the state appeals court, which had only a transcript of the voir dire that did not reveal the race of the jurors.  The Ninth Circuit rejected the state's argument, noting that the photographs did nothing other than "reconstruct facts" (the race of the members of the venire) that were apparent to the state trial court.[3]

The respondent in *Jamerson*, like the Respondent here and the respondent in *Higgins*, argued that the evidence was "new" under *Pinholster* because it was not presented to the state appellate court.  Again, the court in *Jamerson* rejected this contention, using reasoning adopted later by the Fifth Circuit in *Higgins*.  "The State attempts to obscure the common sense of the matter by stressing the fact that the state appellate court, which issued the last reasoned opinion in this case, did

---

[3]As the court put it, "*Pinholster's* concerns are not implicated here. The driver's license photographs depicting the racial composition of Jamerson's jury venire do not constitute new evidence of which the state courts were completely unaware when deciding his *Batson/Wheeler* claims. Instead, these photographs reconstruct physical attributes that were visible to the state court that originally ruled on Jamerson's *Batson/Wheeler* motions. They represent a part of the set of facts that the state court evaluated when concluding that the prosecutor had genuine, race-neutral reasons for striking each juror." *Jamerson*, 713 F.3d at 1226-27. Similarly, in the instant case the transcript does not introduce new evidence of which the state trial court–the court actually tasked with making the *Faretta* determination–was unaware, but instead establishes the very facts upon which the state trial court had to have relied in making its *Faretta* determination.

21

not know the race of every venire member. But nothing in *Pinholster* inherently limits this court's review to evidence that the state appellate court—as opposed to the state trial court—considered. To the contrary, *Pinholster* itself precluded review only of evidence that was never revealed in any state court proceeding." *Id.* at 1227.

The Supreme Court in *Pinholster* dealt with a situation where a federal habeas court conducted an independent evidentiary hearing at which evidence was adduced and considered which not only had never been presented to the state courts, but also related to matters that had taken place outside of the state court proceedings. As the Fifth and Ninth Circuits have held, *Pinholster* does not apply to evidence which, while not having been presented to the state appellate court, nonetheless truly and accurately depicts what occurred before the state trial court whose actions are being considered and reconstructs the very actions which are being evaluated. Accordingly, the District Court's review of and reliance upon the transcript of the February 12 hearing in the present case was proper.

22

## II.    THE DISTRICT COURT CORRECTLY FOUND THAT THE DECISION OF THE VIRGINIA COURT OF APPEALS WAS CONTRARY TO CLEARLY ESTABLISHED LAW

### A.    Supreme Court precedent clearly establishes the requirement of a probing, pre-waiver inquiry that informs the defendant of the risks he faces in self-representation.

The starting point for the substantive inquiry in this appeal is a determination of whether there is clear federal law established by Supreme Court precedent applicable to the Petitioner's claim.  As set forth above (infra. at 8-10), the duty of the state court to conduct an adequate *Faretta* inquiry before permitting a defendant to represent himself was clearly established in 2007.  *See, e.g.*, *Shafer*, 329 F.3d 637 at 647, 650.[4]

---

[4]The Commonwealth devotes a large portion of its Brief to arguing that there is no clear federal law supporting a right to a continuance in order to retain counsel after a prior waiver of counsel.  (Appellant's Brief at 26-31).  While Spates had argued in the state courts that it was error for the court to deny a continuance (which claim was rejected by the Virginia Court of Appeals) he did not pursue that claim in the federal petition.  The Petitioner concedes that there is no clear Supreme Court precedent permitting a defendant to receive counsel after having waived an attorney, but this is not what the Petitioner claimed in his petition nor is it what the District Court decided.  The question in the present case is whether the original waiver was valid; if it was not, then the question of whether a subsequent request for re-appointment of counsel should have been honored is moot.

23

The next step is a determination of what that clear law requires. This, too, the Supreme Court had identified long before 2007. "We have described a waiver of counsel as intelligent when the defendant 'knows what he is doing and his choice is made with eyes open.' We have not, however, prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election, our decisions indicate, will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004).

As to the latter factor, the stage of the proceeding, the Court has held that there is a spectrum. At one end there are stages such as a post-indictment photographic identification at which no right to counsel adheres at all and thus no waiver inquiry is required. *Patterson v. Illinois*, 487 U.S. 285, 298 (1988). "At the other extreme, recognizing the enormous importance and role that an attorney plays at a criminal trial, *we have imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed*, before permitting him to waive his right to counsel at trial. *See Faretta v. California*, 422 U.S. 806, 835-836 (1975); *cf. Von Moltke v. Gillies*, 332 U.S. 708, 723-724 (1948)." (Emphasis added). "In these extreme cases, and in others that fall between these two

24

poles, we have defined the scope of the right to counsel by a pragmatic assessment of the usefulness of counsel to the accused at the particular proceeding, and the dangers to the accused of proceeding without counsel. An accused's waiver of his right to counsel is 'knowing' when he is made aware of these basic facts." *Patterson*, 487 U.S. at 298.

Later, in *Tovar*, the Court commented on its decision in *Patterson* stating, "'[A]t trial,' we observed, 'counsel is required to help even the most gifted layman adhere to the rules of procedure and evidence, comprehend the subtleties of voir dire, examine and cross-examine witnesses effectively . . ., object to improper prosecution questions, and much more.' Warnings of the pitfalls of proceeding to trial without counsel, we therefore said, must be 'rigorous[ly]' conveyed." *Tovar*, 541 U.S. at 89 (citations omitted). In *Tovar* the Court explicitly held that before a defendant can waive his right to an attorney at a guilty plea he must be informed of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea. *Id.* at 81. The requirements before waiving trial counsel are at least as great.

**B.    The evidence shows that the *Faretta* inquiry in the present case was inadequate and that Spates did not knowingly and voluntarily waive his right to counsel.**

As Spate's stand-by counsel explained to the trial judge on May 7, 2007, the chronology of events encompassing his waiver of counsel was as follows:

> Mr. Spates elected to go pro se on the 12th of February, and then we had an intervening date for any motions he wanted. And at that time – that was on the . . . 23rd of April. And at that time Mr. Spates filled out the waiver. . . .

(JA 34). It is these three events–the February 12 hearing, the April 23 execution of the waiver, and the additional inquiry on May 7–which constitute the universe of factual information relating to the waiver.

February 12 was initially the date upon which Spates was to go to trial. The transcript, and the subsequent order entered by the state trial court, make it abundantly clear that the state trial court believed it was putting the waiver issue to rest that day and nothing further would remain to be done regarding it. This was, in large part, due to the fact that the court intended the trial to go forward that day whether Spates waived counsel or not.

Judge Shockley, after hearing for the first time Spates's comments regarding representing himself, stated that "he's not going to get a continuance. . . .

26

[T]he Commonwealth . . . is entitled to go forward with those [indictments] today. . . . We can get a jury list up, and then we'll proceed." (JA 137-38).

After a short recess to permit Spates to speak with his attorney the court returned and Ms. Joslin, still Spates's counsel at the time, stated that Mr. Spates still desired to represent himself. (JA 139). The following dialogue then took place:

> THE COURT: You're sure about this, Mr. Spates?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: You're going to be held to the same standard as if you were an attorney. You understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You're going to be required to know when to make an objection, the basis of the objection. You're going to need to pick the jury. You're going to need to – well, you're going to need to know everything the lawyers know; and you're not going to be given any extra slack in this. You understand that?
>
> THE DEFENDANT: Yes, ma'am.

(JA 139-40).

Spates then indicated that he was not prepared to represent himself and wanted more time to prepare for trial (JA 140-41), while the Commonwealth indicated that all of its witnesses were present and it was prepared to move ahead with trial (JA 141). The court then stated that "[i]t's not going to be continued" and

27

told Spates that the court would arrange to get his notes from his jail cell if he wanted them. (JA 142).  When he continued to insist that he was not prepared an evidently exasperated Judge Shockley told Spates "You do not come in here on the day of trial and tell me that you want to represent yourself and then tell me you're not prepared." (JA 142).

Both the Commonwealth and Ms. Joslin then addressed the court regarding various procedural and evidentiary complexities arising from Spates representing himself which, apparently, would make it difficult to proceed with the trial on that date (JA 142-44).  The court then concluded "It's his right to do so [to represent himself]. All right.  I think I'm sort of stuck here." (JA 144).

After continued back forth over evidentiary issues Judge Shockley concluded by stating:

> THE COURT: Okay, Ms. Joslin, you are relieved of your duties.  If you wish to serve as stand-by counsel, that's fine.  I will appoint you in that sense.
>
> Mr. Spates, you are on your own; and you may represent yourself, as is your right.

(JA 146).

28

The matter was then scheduled for a trial on May 7, with a hearing on April 23, 2007, for any motions that Spates wished to present, *"other than the ones [the court had] already ruled on."* (JA 34, 154).

At the conclusion of the proceedings on February 12 it is evident that Judge Shockley had determined that Spates was going to be representing himself and intended to make no further inquiry into the matter. She ruled on his request on February 12, stating "Okay, Ms. Joslin, you are relieved of your duties. . . . Mr. Spates, you are on your own; and you may represent yourself, as is your right." The court then memorialized its ruling in an order entered February 14, 2007, which stated in relevant part "[t]he Court granted the defense attorney's motion to withdraw for the reasons stated on the record and grants the defendant's motion to represent himself at trial. . . ." (JA 22). The matter of Spate's representing himself was final at this point and nothing further remained to be done.

On the April 23, the date the court set for a hearing on any motions that it had not previously ruled upon, Spates did sign a waiver of counsel form. (JA 24). However, there is no evidence in the record of any proceedings on April 23 relating to any *Faretta* inquiry; it appears that all that took place on that date with respect to self-representation was that Spates signed the waiver form.

In its Brief the Commonwealth implies that more might have taken place on April 23 than simply Spates's execution of the waiver form, and it attempts to fault Spates for not presenting and the District Court for not ordering a transcript of these proceedings.   This is nothing more than a red herring.   The only support the Commonwealth provides for its argument that anything of substance might have occurred on April 23 is a citation to two places in the record where references were made to scheduling matters for April 23 (Appellant's Brief at 19).   Neither of these passages, however, provides any indication that anything relating to the motion to proceed pro se, or further *Faretta* inquiry, was to take place, or took place, on April 23rd.   To the contrary, these passages instead reveal that the court had no intention of revisiting the motion.

The first citation is to stand-by counsel's statement before trial on May 7th that Spates "elected to go pro se on the 12th of February, and then we had an intervening date *for any motions that he wanted. . . .* And at that time Mr. Spates filled out the waiver. . . ." (JA 34) (emphasis added).   Counsel correctly pointed out that the April 23 date was for any motions that *Spates* might have wanted to present, not for re-addressing motions already ruled upon.   And she also pointedly did not say that any further inquiry was conducted by the court on the *Faretta* question on April 23rd, only that Spates filled out the form at that time.

30

The second citation is to a passage in the transcript of the February 12 hearing (surprisingly enough) where Judge Shockley said "[i]f everybody's available, on the 23rd, then you can do motions on the 23rd; so, Mr. Spates, if you have any motions *other than the ones I've already ruled on* that you want to file, you need to get them to the Commonwealth in time." (JA 154) (emphasis added). Clearly Judge Shockley did not intend the motion to proceed pro se and the related *Faretta* inquiry to come up again on April 23rd as she had disposed of them (as shown by the formal order granting the motion that she entered two days later), and she specifically informed Spates that motions she had already ruled upon would not be taken up again on April 23rd.

The Commonwealth next claims that the Virginia Court of Appeals found that Spates moved to proceed pro se on February 12, which is true enough, but then states that the Virginia Court of Appeals also "found" that Spates was formally advised and waived counsel at the April 23, 2007, "hearing" (JA at 20), an assertion which is simply incorrect. While the Court of Appeals did find that Spates moved to proceed pro se on February 12 (JA 74), it clearly did not "find" that there was any hearing on April 23 or that Spates was advised of anything on that date. Instead, choosing its words carefully, the court stated only that "[o]n April 23, 2007, appellant signed a form waiving his right to be represented by counsel at trial." (JA 74). Then,

31

the court described the form, stating that "[t]he form indicates appellant was advised of the charges against him, of the potential punishment he faced, and of his right to be represented by counsel." (JA 74).[5]  The decision nowhere contains any finding or statement that Spates was advised of anything on April 23.

The Commonwealth's arguments are undercut by the fact that execution of the waiver form is a procedural mandate imposed by the Code of Virginia.  As a result, the most plausible read of the waiver form is not that a new *Faretta* inquiry took place on April 23, but rather that the court simply tied up a loose end by having Spates sign a statutorily mandated form that he should have signed on February 12.

Under Va. Code Ann. § 19.2-160, a court must have a defendant execute the waiver form if he waives representation.  The statute does not require that the form be executed at the same time that the *Faretta* inquiry takes place, and it may be executed at any time thereafter.  The form in the present case does not indicate when Spates was advised.  Given what transpired on February 12 and the court's subsequent order on February 14, the waiver form is entirely accurate (and Petitioner does not suggest that he or Judge Shockley made any improper representation in

---

[5]Because the form is a generic, pre-printed document, which contains no place for such information, the court did not state, and could not find, what was supposedly actually said to Spates about the charges or punishment he faced.

32

signing the form), it just refers to the inquiry and advisement that took place on February 12.

Later events also undercut the import of the waiver statement. On May 7 Spates's case was again called for trial. (JA 27). After reading the charges, Judge Padrick asked Spates if he was representing himself. Spates responded "[ye]s, Your Honor. I was representing myself, but I don't know. My counselor was supposed to show up today. . . I obtained counsel. I found and retained counsel." (JA 28). Judge Padrick indicated that no continuance would be given to Spates, as the Commonwealth was ready to proceed. (JA 29). Subsequently, Spates asked if he could speak to Joslin, who was present as stand-by counsel, in private. (JA 39-40). After doing so, Spates stated that he told Joslin that he did not think he could represent himself. (JA 41). Judge Padrick stated "what you've done is you've kind of put yourself in a box a little bit. . . ." (JA 42). Judge Padrick then proceeded with arraignment, asking Spates again if he was ready for trial to begin, to which Spates again responded that he was not. (JA 50).

At the conclusion of the plea hearing the court stated:

THE COURT: Any questions you want to ask me?

DEFENDANT: I mean, I don't - - like I told you, no way I can represent myself. I don't know the procedure, what to do, how to do it; so I'll be sitting here. That's it. If Ms.

33

Joslin not going to represent me or not going to wait for other counsel, there's nothing else I can do.

THE COURT: Well, like I said sir, I was not here - -

DEFENDANT: But when I signed - -

THE COURT: - - when you signed this waiver. I'm looking at the waiver you signed - -

DEFENDANT: Uh-huh.

THE COURT: - - on April 23rd where you waived your right to an attorney and you wished to proceed pro se. And I'm sure Judge Shockley went over all the ramifications with you.

DEFENDANT: No.

THE COURT: She didn't?

DEFENDANT: No, sir. I didn't know that I was signing the waiver to represent my[self] pro se, but I – if I wanted her to represent me, she didn't have to or, you know, that I have to proceed by myself.

(JA 51-52). These statements demonstrate that Spates's waiver could not be classified as "knowing" by any measure.

The inquiry that took place on February 12 was clearly inadequate, consisting only of the brief passage quoted above:

THE COURT: You're sure about this, Mr. Spates?

THE DEFENDANT: Yes, ma'am.

34

> THE COURT: You're going to be held to the same standard as if you were an attorney. You understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You're going to be required to know when to make an objection, the basis of the objection. You're going to need to pick the jury. You're going to need to – well, you're going to need to know everything the lawyers know; and you're not going to be given any extra slack in this. You understand that?
>
> THE DEFENDANT: Yes, ma'am.

(JA 139-40). This is not the probing, rigorous inquiry that the Supreme Court requires; it did not advise Spates of the charges he was facing or the penalties that he would suffer (life imprisonment), it did no more than suggest a subset of the obligations that would be placed upon him, it did not provide a "pragmatic assessment of the usefulness of counsel" at trial, and "the dangers to the accused of proceeding without counsel." It could not possibly have left him with a full understanding of the risks so that he could make a decision with his eyes wide open. "Simply telling [a defendant] that it would be to his advantage to have an attorney d[oes] not advise him of specific dangers or limitations related to self representation." *Shafer*, 329 F.3d at 648.

While the subsequently executed pre-printed waiver form does recite that Spates was advised of the "nature of the charges" and the "potential punishment," it

35

does not anywhere recite the charges or the potential sentences, and thus provides no independent confirmation that Spates was so advised. It is directly contradicted by the February 12 transcript. The form also recites that the waiver is being made knowingly and voluntarily, but again sets forth no background for this conclusion. Below Spates's signature is an additional block of text, signed by Judge Shockley, which indicates that the defendant was advised of the "rights and matters stated above" and that the defendant "knowingly, voluntarily and intelligently" waived his rights. The May 7 transcript shows that no further *Faretta* inquiry took place and makes it painfully evident that Spates did not know what he had gotten into when he requested that he be allowed to proceed pro se.

The evidence thus stands in sharp contrast. On the side of the Commonwealth there exists only the pre-printed waiver form signed on April 23, almost a month and a half after the actual *Faretta* hearing and devoid of any supporting facts, containing only generic, pre-printed, conclusory statements. Arrayed against the pre-printed form advanced by the Commonwealth are the actual transcript of the *Faretta* hearing showing that no adequate inquiry took place, an order dated two days later showing that the request for self-representation had been resolved at that point (more than a month prior to April 23), and the transcript of Spates's testimony on May 7 demonstrating that he did not receive the required

*Faretta* information and that he did not understand that he was going to representing himself pro se.

"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits. . . . [He] should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835. "The fact that an accused may tell [the judge] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility." *Von Moltke*, 332 U.S. at 724. The "[w]arnings of the pitfalls of proceeding to trial without counsel . . . must be rigorously conveyed." *Tovar*, 541 U.S. at 89. The inquiry on February 12 was not the rigorous inquiry called for by *Faretta*, *Patterson* and *Tovar* and the District Court was correct in so concluding.

> **C.    The decision of the Virginia Court of Appeals that the *Faretta* inquiry was adequate, based solely upon the waiver form, was contrary to and an unreasonable application of clearly established Supreme Court precedent.**

The next question is whether, even though the underlying *Faretta* inquiry was inadequate, the Virginia Court of Appeals' determination that Spates's

waiver was valid is nonetheless not "contrary to" or an "unreasonable application" of clearly established federal law.

Under § 2254, federal habeas relief may not be granted unless a petitioner shows that the state court's decision "was contrary to" clearly established federal law, § 2254(d)(1); *Williams*, 529 U.S. at 412; or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2). *Harrington*, ___ U.S. at ___, 130 S. Ct. at 785.

A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. An "unreasonable application" of federal law occurs when "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case," *id.*, or when the state court "applies a precedent in a context different from the one in which the precedent was decided and one to which extension of the legal principle of the precedent is not reasonable,"

38

*Green v. French*, 143 F.3d 865, 870 (4th Cir. 1998), *overruled on other grounds by Williams v. Taylor*, 539 U.S. 362 (2000).[6]

In the instant case the District Court found that the Virginia Court of Appeals' determination that Spates validly waived his right to counsel was based on an "unreasonable determination of the facts" (JA 198). The District Court also concluded that the Virginia Court of Appeals' decision that Spates freely and voluntarily waived his right to counsel was "contrary to" clearly established law. (JA 200). By contrast, in its Brief the Commonwealth devotes several pages to discussing the standard of review used in determining whether a state court's decision was an "unreasonable" application of federal law, a conclusion the District Court did not reach (Appellant's Brief at 12-15).

This semantic distinction has important legal consequences. If a state court decision is incorrect because it is contrary to federal law, then the analysis ends and the state court decision is entitled to no deference under § 2254. If, however, the decision is incorrect, but not contrary to federal law, the incorrectness must rise to the

---

[6]In a recent unpublished case this Court has distinguished between the two 2254(d)(1) provisions by stating that if the state court applies the correct federal law, then the resulting decision must be analyzed under the "unreasonable" prong, rather than the "contrary to" prong. *Scanlon v. Harkleroad*, 467 Fed. Appx. 164, 168 n.2 (4th Cir. 2012).

level of unreasonableness before the state court decision loses deferential review under 2254.[7] *Early v. Packer*, 537 U.S. 3, 11 (2002) (per curiam).

In its decision, the Virginia Court of Appeals did not cite *Faretta*, instead referring only to two state court decisions, *Edwards v. Commonwealth*, 462 S.E.2d 566, 570 (Va. Ct. App. 1995), and *Lemke v. Commonwealth*, 241 S.E.2d 789, 791 (1978). (JA 74). The decision in *Edwards* discusses *Faretta* at some length and as the Supreme Court has held that state courts need not cite, or even be aware of, the applicable federal cases, *Early*, 537 U.S. at 8, it would appear that the Virginia Court of Appeals applied the correct law. If the facts of this case were indistinguishable from those in *Faretta*, then the District Court would be correct in finding the Virginia

---

[7]The Supreme Court has struggled to give meaning to the term "unreasonable," advancing several different formulations even within the single majority opinion in *Harrington*. There the Court stated a decision was not unreasonable if "'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington,* 130 S. Ct. at 786. It then also stated that in making the reasonableness determination "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* Finally the Court stated that "As a condition for obtaining habeas corpus from a federal court [on unreasonableness grounds], a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87. Whatever these different formulations mean, there is no dispute that the "standard is difficult to meet." 786.

40

Court of Appeals' decision to be *contrary* to federal law; otherwise, it would appear that it is correct to analyze the decision of the Virginia Court of Appeals under the *unreasonable application* prong.

Whether the proper lens for analyzing the Virginia Court of Appeals' decision is the "contrary to" lens as the District Court concluded, or the "unreasonable" lens as the Commonwealth contends, is not clear as federal courts of appeals have found state court decisions raising *Faretta* issues to be both contrary to clearly established federal law, *see Alongi*, 367 Fed. Appx. at 348,[8] and an unreasonable application of federal law, *see Shafer*, 329 F.3d at 651. The Court need not resolve the issue here as the decision of the Virginia Court of Appeals is incorrect under either approach.

The Faretta inquiry on February 12 speaks for itself. A finding that this rudimentary inquiry, which did not advise Spates of the charges or penalties, the dangers of self-representation or the risks that he faced, would be contrary to federal law. Likewise, such a finding would be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. The Commonwealth does not appear to seriously dispute

---

[8]It should be noted, though, that in *Alongi* the issue was not the adequacy of the state court's *Faretta* inquiry, but its ultimate decision to deny the request for leave to proceed pro se.

41

this.  Instead it argues that the Virginia Court of Appeals' decision was permissible in light of the waiver form.  However, for the reasons set forth above, reliance on the waiver alone, given the strongly contradictory evidence contained in the transcript of the February 12 hearing and the May 7 hearing, would likewise be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[9]

### III.  THE DISTRICT COURT PROPERLY CONSULTED LOWER COURT PRECEDENT NOT TO DETERMINE WHAT CONSTITUTED CLEAR FEDERAL LAW, BUT INSTEAD TO DETERMINE WHAT CONSTITUTED A DEVIATION FROM THAT CLEAR LAW

The Commonwealth's last argument is that the Magistrate Judge, and the District Court by extension, erred in considering "circuit precedent" when conducting the unreasonableness inquiry.  However, the Commonwealth conflates reviewing the decisions of the circuit courts to determine whether there is a clear federal rule with consulting circuit precedent to determine whether a particular set of facts gives rise to a violation of a clearly established rule.  The former is clearly prohibited, *Marshall*

---

[9]Moreover, to the extent that there was any finding by the Virginia Court of Appeals that the waiver form alone established an adequate inquiry such a finding would be an unreasonable factual finding itself as it failed to incorporate any of the other evidence in the case demonstrating that the pre-printed statements on the waiver form were not, in fact, correct.

42

*v. Rodgers*, ___ U.S. ___, ___, 133 S. Ct. 1446, 1451 (2013) (stating that under 2254 a federal court "may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to this Court, be accepted as correct"), while the latter is acceptable and a routine practice of the federal courts, *see Shafer*, 329 F.3d 637; *Smith*, 565 F.3d at 1047; *Alongi*, 367 Fed. Appx. 341; *Jones*, 660 F. Supp. 2d 1059, all of which considered lower court precedent in reaching their ultimate conclusions that state court decisions were unreasonable applications of clear Supreme Court precedent.

## CONCLUSION

For the foregoing reasons the District Court correctly found that the decision of the Virginia Court of Appeals was contrary to or an unreasonable application of clearly established Supreme Court precedent and the decision should therefore be affirmed.

Respectfully submitted,

MACEO SPATES,

by counsel

/s/_____
Neal L. Walters, Esq. (VSB No. 32048)
Scott/Kroner, PLC
418 East Water Street
P.O. Box 2737
Charlottesville, VA 22902
(434) 296-2161

Counsel for Appellee

44

## CERTIFICATE OF COMPLIANCE WITH
## TYPEFACE AND LENGTH LIMITATIONS

Counsel for the Appellee certifies:

1. That this brief has been prepared using WordPerfect 12.0, and the typeface Times New Roman 14 point.

2. That exclusive of the table of contents, table of authorities, and certification of service, the brief contains 9,628 words.

Counsel for the Appellee understands that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

/s/_____

Neal L. Walters, Esq.
Counsel for Appellee

45

CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25, I hereby certify that I have this 16th day of July, 2013, filed the required copies of the Appellee's Brief in the Clerk's Office of the United States Court of Appeals for the Fourth Circuit via hand delivery and electronically using the Court's CM/ECF system which will send notification to all counsel of record:

/s/_____
          Neal L. Walters, Esq.
          Counsel for Appellee

46