RECORD NO. 15-1187

IN THE

# UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

**RICKY HENSON, IAN GLOVER, KAREN PACOULOUTE f/k/a Karen Welcome Kuteyi and PAULETTE HOUSE, on behalf of themselves and all others similarly situated,**

*Plaintiffs-Appellants*,

v.

**SANTANDER CONSUMER USA, INC.,**

*Defendant-Appellee.*

----------------------------

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND AT BALTIMORE**

---------------------------------------------------

**BRIEF OF *AMICI CURIAE* NATIONAL CONSUMER LAW CENTER, NATIONAL ASSOCIATION OF CONSUMER ADVOCATES, CIVIL JUSTICE, INC., PUBLIC JUSTICE CENTER, INC., MARYLAND CONSUMER RIGHTS COALITION, INC., AND THE MARYLAND ATTORNEY GENERAL IN SUPPORT OF PLAINTIFFS-APPELLANTS AND IN SUPPORT OF REVERSAL**

---------------------------------------------------

JOSEPH S. MACK
CATHERINE GONZALEZ
CIVIL JUSTICE, INC.
520 W. FAYETTE ST., SUITE 410
BALTIMORE, MARYLAND 21201
(410) 706-7985
*Counsel for Non-Profit Amici Curiae*

BRIAN E. FROSH
ATTORNEY GENERAL
STATE OF MARYLAND
200 ST. PAUL PLACE, 20TH FLOOR
BALTIMORE, MARYLAND 21202

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-1187__     Caption: __Henson v. Santander__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__The National Consumer Law Center, Inc. ("NCLC")__
(name of party/amicus)

_____

 who is _____amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.     Does party/amicus have any parent corporations?                               ☐YES ☑NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                         ☐YES ☑NO
       If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☐NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Joanne Faulkner                      Date:      June 17, 2015

Counsel for: NCLC

## CERTIFICATE OF SERVICE
**************************

I certify that on      June 19, 2015      the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Joseph Mack                                    June 19, 2015
            (signature)                                       (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-1187__      Caption: __Henson v. Santander__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__The National Association of Consumer Advocates, Inc. ("NACA")__
(name of party/amicus)

_____

 who is _____amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent
        corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                                  ☐ YES ☑ NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☐NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Lynn Drysdale _____        Date: _____June 17, 2015_____

Counsel for: NACA _____

# CERTIFICATE OF SERVICE
****************************

I certify that on _____6/19/15_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Joseph Mack _____              _____6/19/15_____
      (signature)                                         (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1187__      Caption: __Henson v. Santander__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Civil Justice, Inc.__

(name of party/amicus)

_____

who is _____amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☐NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Joseph Mack                              Date:      June 19, 2015

Counsel for: Civil Justice, Inc.

## CERTIFICATE OF SERVICE
**************************

I certify that on _____6/19/15_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Joseph Mack                                          6/19/15
        (signature)                                      (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-1187__        Caption: __Henson v. Santander__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Public Justice Center, Inc.__
(name of party/amicus)

_____

 who is _____amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                      ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
      If yes, identify entity and nature of interest:


5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☐NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:


6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:



Signature: /s/ Anna Jagelewski                          Date:    June 19, 2015

Counsel for: Public Justice Center, Inc.


# CERTIFICATE OF SERVICE
**************************

I certify that on _____6/19/15_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:



/s/ Joseph Mack                                          6/19/15
      (signature)                                         (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1187__        Caption: __Henson v. Santander__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Maryland Consumer Rights Coalition, Inc.__
(name of party/amicus)

_____

 who is _____amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                        ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question) ☐YES ☐NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Marceline White          Date:      June 19, 2015

Counsel for: Maryland Consumer Rights Coalition

## CERTIFICATE OF SERVICE
**************************

I certify that on _____6/19/15_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Joseph Mack                          6/19/15
(signature)                              (date)

- 2 -

# TABLE OF CONTENTS

Page

DISCLOSURES OF CORPORATE AFFILIATIONS AND OTHER
    INTERESTS

TABLE OF AUTHORITIES ................................................................. iii

A.    STATEMENT OF INTEREST OF *AMICI* ................................1

B.    SUMMARY OF ARGUMENT.................................................2

C.    LEGAL AND FACTUAL BACKGROUND .........................4

    1.    THE FDCPA ...............................................................4

    2.    FACTUAL BACKGROUND ........................................5

    3.    PROCEDURAL HISTORY ...........................................6

D.    ARGUMENT..........................................................................7

    1.    THE FDCPA APPLIES TO DEBT BUYERS WHO
        PURCHASE DEFAULTED CONSUMER DEBTS ......................7

    2.    THE LEGISLATIVE HISTORY AND PURPOSE OF
        THE FDCPA CONFIRM THAT PURCHASERS OF
        DEFAULTED CONSUMER DEBTS ARE DEBT
        COLLECTORS UNDER THE FDCPA .......................................14

    3.    THE WEIGHT OF AUTHORITY OVER THE PAST
        TWENTY-EIGHT YEARS SINCE *KIMBER*
        SUPPORTS APPELLANTS' POSITION ....................................18

    4.    THE FEDERAL AGENCIES CHARGED WITH
        ENFORCING THE FDCPA HAVE CONSISTENTLY
        AGREED THAT PURCHASERS OF DEFAULTED
        CONSUMER DEBTS ARE SUBJECT TO THE FDCPA............21

    5.    SANTANDER'S POSITION WOULD HAVE BROAD
        IMPLICATIONS FOR THE MASSIVE AND
        GROWING DEBT BUYER INDUSTRY ....................................24

E.     CONCLUSION ........................................................................30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# <u>TABLE OF AUTHORITIES</u>

Page

## <u>Cases</u>

*Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*
    929 F. Supp. 2d 502 (D. Md. 2013) .......................................................20

*Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*
    111 F.3d 1322 (7th Cir. 1997)................................................................22

*Bradshaw v. Hilco Receivables*
    765 F. Supp. 2d 719 (D. Md. 2011) ......................................................20

*Bragdon v. Abbott*
    524 U.S. 624 (1998) ...............................................................................22

*Bridge v. Ocwen Fed. Bank, FSB*
    681 F.3d 355 (6th Cir. 2012)............................................................ 10-11

*Broughman v. Carver*
    624 F.3d 670 (4th Cir. 2010) ...................................................................7

*Caprio v. Healthcare Revenue Recovery Grp., LLC*
    709 F.3d 142 (3d Cir. 2013) ............................................................ 13-14

*Cirkot v. Diversified Fin. Sys., Inc.*
    839 F. Supp. 941 (D. Conn. 1993) ..........................................................5

*Crawford v. LVNV Funding, LLC*
    758 F.3d 1254 (11th Cir. 2014)..............................................................19

*Christensen v. Harris Cnty.*
    529 U.S. 576 (2000) ...............................................................................22

*Farber v. NP Funding II L.P.*
    No. CV-96-4322 (CPS), 1997 WL 913335 (E.D.N.Y. Dec. 9, 1997) .....19

*FTC v. Check Investors, Inc.*
    502 F.3d 159 (3d Cir. 2007) ...................................... 3-4, 10-12, 21, 29-30

iii

*Gonzales v. Arrow Fin. Serv., LLC*
    660 F.3d 1055 (9th Cir. 2011) .................................................................1

*Hamilton v. United Healthcare of La.*
    310 F.3d 385 (5th Cir. 2002) ..................................................................5

*Hamlett v. Santander Consumer USA Inc.*
    931 F. Supp. 2d 451 (E.D.N.Y. 2013) ....................................................3

*Healthkeepers, Inc. v. Richmond Ambulance Auth.*
    642 F.3d 466 (4th Cir. 2011). ...........................................................7, 13

*Heredia v. Green*
    667 F.2d 392 (3d Cir. 1981). .................................................................13

*Hibbs v. Winn*
    542 U.S. 88 (2004). .................................................................................8

*Holmes v. Telecredit Serv. Corp.*
    736 F. Supp. 1289 (D. Del. 1990) ...................................................13, 19

*Johnson v. Riddle*
    305 F.3d 1107 (10th Cir. 2002) ............................................................14

*Kimber v. Federal Financial Corp.*
    668 F. Supp. 1480 (M.D. Ala. 1987) ...................................... 9-10, 19, 22

*Larsen v. JBC Legal Grp., P.C.*
    533 F. Supp. 2d 290 (E.D.N.Y. 2008) ...................................................18

*Maloney v. LVNV Funding LLC*
    No. 3:06-CV-0452, 2006 WL 3006484 (N.D. Tex. Oct. 20, 2006).........18

*McKinney v. Cadleway Prop., Inc.*
    548 F.3d 496 (7th Cir. 2008) .......................................................... 11-12

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*
    551 U.S. 644 (2007) ................................................................................7

*Olsen v. Lake Country, Inc.*
    955 F.2d 203 (4th Cir. 1991) .................................................................13

*Perry v. Stewart Title Co.*
    756 F.2d 1197 (5th Cir. 1985) ..............................................................20

*Pollice v. Nat'l Tax Funding, L.P.*
    225 F.3d 379 (3d Cir. 2000) .................................................................18

*PSINet, Inc. v. Chapman*
    362 F.3d 227 (4th Cir. 2004) ..................................................................8

*Ramsay v. Sawyer Prop. Mgmt. of Maryland LLC*
    93 F. App'x 204 (4th Cir. 2014) ......................................................... 4-5

*Robinson v. Shell Oil Co.*
    519 U.S. 337 (1997) .............................................................................13

*Romine v. Diversified Collection Servs., Inc.*
    155 F.3d 1142 (9th Cir. 1998) ..............................................................22

*Ruth v. Triumph Partnerships*
    577 F.3d 790 (7th Cir. 2009) .......................................................... 11-12

*Schlosser v. Fairbanks Capital Corp.*
    323 F.3d 534 (7th Cir. 2003) .........................................................10, 12

*Scott v. United States*
    328 F.3d 132 (4th Cir. 2003) ..................................................................7

*Skidmore v. Swift & Co.*
    323 U.S. 134 (1944) .............................................................................22

*United States v. Mead Corp.*
    533 U.S. 218 (2001) .............................................................................22

*United States v. Wills*
    234 F.3d 174 (4th Cir. 2000) ..................................................................7

*U.S. Dep't of Labor v. N. Carolina Growers Ass'n*

377 F.3d 345 (4th Cir. 2004) ................................................................7, 8

*Winemiller v. Worldwide Asset Purchasing*
No. 1:09-cv-02487, 2011 WL 1457749 (D. Md., Apr. 15, 2011)............20

*Winterstein v. CrossCheck, Inc.*
149 F. Supp. 2d 466 (N.D. Ill. 2001).................................................. 18-19

## **Statutes and Rules**

15 U.S.C. § 1692 .................................................................................4

15 U.S.C. § 1692a ....................................................................*passim*

15 U.S.C. § 1692b ...............................................................................5

15 U.S.C. § 1692e ...............................................................................5

15 U.S.C. § 1692f ...............................................................................5

## **Miscellaneous**

123 Cong. Rec. 10241 (1977)...............................................................5

Brief for the Commercial Law League of America and DBA International as
*Amici Curiae* Supporting Respondents, *Jerman v. Carlisle, McNellie,
Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) (No. 08–1200)..........20

CFPB, 2013 Fair Debt Collection Practices Annual Report (March 2013) .......24

CFPB, 2014 Fair Debt Collection Practices Annual Report (March 2013) .......25

CFPB, Advanced Notice of Proposed Rulemaking of November 12, 2013,
Debt Collection (Regulation F), 78 Fed. Reg. 67848................... 23-24, 29

CFPB Bulletin 2013-07, Prohibition of Unfair, Deceptive, or Abusive Acts
or Practices in the Collection of Consumer Debts ..................................24

Dalié Jiménez, *Dirty Debts Sold Dirt Cheap*, 52 HARV. J. ON LEGIS. 41
(2015)......................................................................................................27

FTC, *Collecting Consumer Debts: The Challenges of Change – A Workshop
Report* (February 2009) .................................................................. 22-23

FTC, *Repairing a Broken System: Protecting Consumers in Debt Collection
Litigation and Arbitration* (July 2010)......................................................23

FTC, *The Structure and Practices of the Debt Buying Industry* (2013)....... 25-27

FTC's Complaint filed in the U.S. District Court for the Central District of
California (*FTC v. Asset & Capital Management Group*, Case No.
CV13-5267 DSF)......................................................................................22

Jessica Silver-Greenberg, *Boom in Debt Buying Fuels Another Boom - In
Lawsuits*, WALL ST. J., Nov. 29, 2010.......................................................26

Letter from Clarke W. Brinckerhoff to Kimberlee Arbuckle (Dec. 22, 1993),
FTC Informal Staff Opinion Letter .................................................. 22-23

Merriam-Webster.com (May 7, 2015), http://www.merriam-
webster.com/dictionary/for.......................................................................13

Neil L. Sobol, *Protecting Consumers from Zombie-Debt Collectors*, 44 N.M.
L. REV. 327 (2014) ...................................................................................28

Peter A. Holland, *The One Hundred Billion Dollar Problem in Small Claims
Court: Robo–Signing and Lack of Proof in Debt Buyer Cases*, 6 J.
BUS. & TECH. L. 259 (2011) ....................................................................27

Press Release, FTC, At FTC's Request, Court Orders Halt to Debt
Collector's Illegal Practices, Freezes Assets (Aug. 1, 2013) ............. 21-22

Press Release, FTC, Debt Buyer/Debt Collection Companies and Their
Principals Settle FTC Charges (Mar. 24, 2004)........................... 21, 27-28

Press Release, FTC, Debt Collector Settles with FTC for Abusive Practices
(Mar. 12, 2007)..........................................................................................28

Rick Jurgens & Robert J. Hobbs, *The Debt Machine: How the Collection Industry Hounds Consumers and Overwhelms Courts*, NAT'L CONSUMER L. CTR. 18 (July 2010)............................................................29

Robert M. Hunt, *Collecting Consumer Debts in America*, Fed. Res. Bank of Philadelphia Bus. Rev. (Second Quarter 2007).................................. 25-26

S. Rep. No. 95–382, 95th Cong., 1st Sess., reprinted in 1977 U.S. Code Cong. & Admin. News 1695 ................................................... 8, 14-15, 17

Senate Comm. on Banking, Housing & Urban Affairs, Markup Session: S. 1130 Debt Collection Legislation (June 30, 1977) ........................... 14-18

## A. STATEMENT OF INTEREST OF *AMICI*

As explained more fully in their Motion for Leave to File Amicus Brief,

*Amici Curiae* National Association of Consumer Advocates, National Consumer

Law Center, AARP, Inc., Civil Justice, Inc., the Public Justice Center, Inc. and the

Maryland Consumer Rights Coalition, Inc. (collectively, the "Non-Profit *Amici*")

are non-profit organizations that advocate for consumers victimized by predatory

practices.  The Non-Profit *Amici* regularly encounter consumers who have been

wronged by "debt buyers" – companies that purchase defaulted consumer debts,

typically for pennies on the dollar and even less,[1] and then seek to collect the full

amount of the alleged debt against consumers.  Having witnessed the abuses

committed by some unscrupulous debt buyers, the Non-Profit *Amici* support

maintaining the protections of the Fair Debt Collection Practices Act ("FDCPA")

for consumers against debt buyers.  *Amicus Curiae* the Attorney General of

Maryland (together with the Non-Profit *Amici*, the "*Amici*") is charged with

protecting Maryland consumers.  The Attorney General of Maryland is interested

in ensuring that the citizens of Maryland enjoy the protections provided by the

FDCPA.  *Amici* have no financial interest in this matter and are not being

---

[1] *See, e.g.*, *Gonzales v. Arrow Fin. Serv., LLC*, 660 F.3d 1055, 1059 n.1 (9th Cir. 2011).

1

compensated for their participation in this matter.  No party's counsel authored this brief in whole or in part.

**B. <u>SUMMARY OF ARGUMENT</u>**

The court below ruled that Appellee Santander Consumer USA Inc. ("Santander") was not subject to the FDCPA even though it purchased defaulted consumer debt and regularly attempted to collect on it.  The ruling contravenes, and threatens to disrupt, decades of uniform interpretation of the FDCPA by federal courts which have held consistently that a buyer of debt that is in default is a "debt collector" bound to comply with the provisions of the FDCPA.

The lower court allowed Santander to escape the FDCPA by its narrow reading of the statutory language "for another."  Yet, Santander bought the defaulted consumer accounts solely for the purpose of collecting them "for another" as assignee of the originating creditor.  That is, Santander collected debt in the place of (for), or in lieu of (for), the originating creditor.  The long-established understanding that purchasers of defaulted debt must comply with the FDCPA as any other covered "debt collector" is entirely consistent with this statutory language.

A "debt collector" is one "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  A debt collector must be collecting a debt that was "in

2

default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii).

Even if one is collecting a defaulted debt "owed or due another," that person is *not*

a debt collector if the debt was "originated by such person." 15 U.S.C.

§1692a(6)(f)(ii). Santander was collecting a debt that it acquired after the

consumer defaulted, Santander did not originate that debt, and Santander was

collecting for (in lieu of) the originating creditor. Therefore, Santander is not an

exempt creditor and must comply with the FDCPA.

The holding that a debt buyer is not subject to the FDCPA because the debt

buyer is not seeking to collect "for another" is untenable. The ruling below (1)

runs afoul of the principles of statutory construction; (2) is inconsistent with

congressional intent and legislative history of the FDCPA; (3) is so contrary to the

weight of authority that in 2013, the U.S. District Court for the Eastern District of

New York said that the same argument, made by the same debt buyer as in this

case, "bordered on the sanctionable," *Hamlett v. Santander Consumer USA Inc.*,

931 F. Supp. 2d 451, 455 (E.D.N.Y. 2013); and (4) is at odds with the position

taken by the federal agency charged with enforcing the statute since its enactment.

In sum, the lower court's reading of the FDCPA, which would effectively exempt

the entire debt buying industry from the statute's coverage, "elevate[s] form over

substance and weave[s] a technical loophole into the fabric of the FDCPA big

enough to devour all of the protections Congress intended in enacting that

legislation." *FTC v. Check Investors, Inc.*, 502 F.3d 159, 172-73 (3d Cir. 2007).

A massive industry now exists of thousands of companies buying approximately one hundred billion dollars of defaulted consumer debt annually. As explained in detail below, members of the debt buying industry, which developed after the passage of the FDCPA, embody the exact type of entity that Congress intended to regulate through the statute.

## C. LEGAL AND FACTUAL BACKGROUND

### 1. THE FDCPA

Congress passed the FDCPA in 1977 in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). Congress expressly found that these abusive debt collection practices "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id*. Determining that existing laws were inadequate to address the problem, § 1692(b), Congress acted in order to "eliminate abusive debt collection practices," and also "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

In keeping with the purposes expressed in §1692, the FDCPA comprehensively regulates debt collection practices by both imposing affirmative requirements on debt collectors and prohibiting a wide range of misconduct.

4

*Ramsay v. Sawyer Prop. Mgmt. of Maryland LLC*, 593 F. App'x 204, 207 (4th Cir. 2014); *see, e.g.*, § 1692e (prohibiting the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt"); § 1692f (prohibiting the use of "unfair or unconscionable means to collect or attempt to collect any debt"); § 1692b (setting out the rules a debt collector must follow for "acquiring location information" about the debtor).  Through the FDCPA, Congress "legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope." *Hamilton v. United Healthcare of La.*, 310 F.3d 385, 392 (5th Cir. 2002).[2]

## 2.  FACTUAL BACKGROUND

This case involves a portfolio of consumer automobile loans made to Appellants by various CitiFinancial Auto entities (collectively, "CitiFinancial Auto").  Complaint at ¶¶ 27, 28.  After Appellants defaulted on those loans, CitiFinancial Auto had the automobiles repossessed.  *Id.* at ¶¶ 32, 33.  Appellants were among the class members in a lawsuit that was then filed against CitiFinancial Auto regarding the fees and payments demanded by CitiFinancial

---

[2] *See Cirkot v. Diversified Fin. Sys., Inc.*, 839 F. Supp. 941, 944-47 (D. Conn. 1993) ("The FDCPA is based on the premise '[t]hat every individual, whether or not he owes [a] debt, has a right to be treated in a reasonable and civil manner'" (quoting 123 Cong. Rec. 10241 (1977) (remarks of Rep. Frank Annunzio)).

5

Auto as part of deficiency balances alleged to be owed by the class members after the repossessions. *Id.* at ¶ 38. On September 30, 2011, the parties reached a settlement agreement in that class action case providing for payments to the class members and the waiver of any alleged outstanding deficiency balances owed by the class members. *Id.* at ¶¶ 40, 41.

CitiFinancial Auto initially hired Santander to collect the alleged deficiency balances after the debts were already in default (indeed, after the automobiles had been repossessed). *Id.* at ¶ 47. On or before December 1, 2011 Santander purchased Appellants' defaulted debts from CitiFinacial Auto. *Id.* at ¶ 48. And by December 1, 2011, Santander knew that the U.S. District Court for the District of Maryland had entered a preliminary order approving the settlement agreement in the class action that would waive any outstanding balances owed by Appellants to CitiFinancial Auto. *Id.* at ¶¶ 49, 50. Nevertheless, after December 1, 2011, Santander began contacting Appellants seeking payments on those same debts in default, which had already been waived under the settlement agreement. *Id.* at ¶ 52.

### 3. PROCEDURAL HISTORY

Appellants sued Santander, claiming that Santander violated the FDCPA by, among other things, knowingly seeking from consumers payments to which it was not entitled as a result of the settlement. *Id.* at ¶ 97. Santander moved to dismiss,

6

not contending that its collection efforts were lawful, but claiming that because it owned the Appellants' debts that it had purchased after default, it was an exempt "creditor" under the FDCPA rather than a covered debt collector. The District Court agreed with Santander and granted its motion to dismiss.

**D. ARGUMENT**

**1. THE FDCPA APPLIES TO DEBT BUYERS WHO PURCHASE DEFAULTED CONSUMER DEBTS**

The Court's objective in all cases of statutory interpretation is "'to ascertain and implement the intent of Congress.'"  *Broughman v. Carver*, 624 F.3d 670, 674-75 (4th Cir. 2010) (quoting *Scott v. United States*, 328 F.3d 132, 138 (4th Cir. 2003)).  "Because Congress' intent 'can most easily be seen in the text of the Acts it promulgates,'" *id*. at 675 (quoting *United States v. Wills*, 234 F.3d 174, 178 (4th Cir. 2000)), statutory interpretation begins with the plain language of the statute. *U.S. Dep't of Labor v. N. Carolina Growers Ass'n*, 377 F.3d 345, 350 (4th Cir. 2004); *Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 471 (4th Cir. 2011).  "[A] reviewing court should not confine itself to examining a particular statutory provision in isolation.  Rather, [t]he meaning—or ambiguity— of certain words or phrases may only become evident when placed in context." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007) (internal quotation marks and citation omitted).

"[A] statute should be construed so that effect is given to all its provisions, so that no part will be . . . superfluous." *N. Carolina Growers Ass'n*, 377 F.3d at 351 (quoting *Hibbs v. Winn*, 542 U.S. 88 (2004)); *see also PSINet, Inc. v. Chapman*, 362 F.3d 227, 232 (4th Cir. 2004) ("Principles of statutory construction require 'a court to construe all parts to have meaning' and, accordingly, avoid constructions that would reduce some terms to mere surplusage"). "The rule against superfluities complements the principle that courts are to interpret the words of a statute in context." *Hibbs*, 542 U.S. at 124. Statutory language must be read in context because "a phrase gathers meaning from the words around it." *N. Carolina Growers Ass'n*, 377 F.3d at 350.

With certain exceptions, the FDCPA covers the actions of debt collectors, rather than creditors, because "[u]nlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them." S. Rep. No. 95–382, 95th Cong., 1st Sess., reprinted in 1977 U.S. Code Cong. & Admin. News 1695, 1696.

The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

8

15 U.S.C. § 1692a(6). Among other exclusions, the term does not apply to "any

person collecting or attempting to collect any debt owed . . . or due another to the

extent such activity . . . concerns a debt that was not in default at the time it was

obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). "Creditor" is defined as

"any person who offers or extends credit creating a debt or to whom a debt is

owed," but excludes "any person to the extent that he receives an assignment or

transfer of a debt in default solely for the purpose of facilitating collection of such

debt for another." 15 U.S.C. § 1692a(4) (the "Assignee Exception").

In the seminal opinion, *Kimber v. Federal Financial Corp.*, 668 F. Supp.

1480 (M.D. Ala. 1987), U.S. District Judge Myron Thompson observed that the

coverage provisions of the FDCPA are "far from a model of drafting clarity." *Id.*

at 1484. When read in isolation, the Assignee Exception appears nonsensical, only

applying to an assignee who received debt after default but is not collecting for

itself, a scenario almost impossible to imagine. However, when read in context

and with the directive to avoid rendering the Assignee Exception meaningless, the

meaning is clear:

> To say that this exception applies only to those who collect debts
> for others would be to render the exception superfluous and
> meaningless; those who collect debts for others are not in the
> original definitional universe, and there is therefore no need to
> exclude them. Rather, the excluding factors in the exception are
> that the debts are the result of an assignment or transfer and that
> the debts were already in default at the time of assignment or

9

transfer. With the phrase 'for another' at the end of the exception, Congress merely intended that the debts should have originally belonged to another and that the creditor was therefore in effect a third-party or independent creditor.

*Id.* at 1485. Similarly, Judge Thompson noted the phrase "owed or due another" in the definition of "debt collector" in § 1692a(6) only makes sense if the phrase is understood to mean *originally* owed or due another. Judge Thompson explained:

> [T]he first part of § 1692a(4) defines the universe of creditors as those who collect debts for themselves. Section 1692a(6)(A) purports to exclude these creditors from the general definition of debt collector. There would be no need to exclude creditors— those who collect debts for themselves—from the general definition of debt collector unless that general definition included those who collect debts for themselves.

*Id*.

Consistent with *Kimber*, federal appellate court decisions uniformly conclude that the operative question for determining whether an entity is a "creditor" or "debt collector" is the status of the debt at the time it was acquired. *See Bridge v. Ocwen Fed. Bank, FSB,* 681 F.3d 355, 359 (6th Cir. 2012); *Check Investors*, 502 F.3d at 173; *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003). Put simply, "the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." [3] *Schlosser,* 323 F.3d at 536; *accord Bridge,* 681 F.3d at

---

[3] These courts noted, as an initial matter, that "creditors" and "debt collectors" are mutually exclusive categories under the FDCPA. *See Bridge,* 681

10

359; *McKinney v. Cadleway Prop., Inc.*, 548 F.3d 496 (7th Cir. 2008); *Check Investors*, 502 F.3d at 173.

In *McKinney v. Cadleway Properties*, the Seventh Circuit explained that the Act draws the distinction "by the *exclusionary* language . . . in the statutory definitions of creditor and debt collector":

> That is, the definition of creditor excludes those who acquire and attempt to collect a "debt *in default,*" § 1692a(4) (emphasis added), while the definition of debt collector excludes those who acquire and attempt to collect "a debt which was *not in default* at the time it was obtained," § 1692a(6)(F) (emphasis added). So one who acquires a "debt in default" is categorically *not* a creditor; one who acquires a "debt not in default" is categorically *not* a debt collector.

548 F.3d at 501. In other words, the "second subcategory of debt collectors," *i.e.* those who regularly collect debts owed or due another, "refers back to a group specifically *excluded* from the Act's definition of creditors – those who receive 'an assignment or transfer of a debt in default' for the purpose of 'facilitating [the] collection of such debt for another.'" *Id.* at 500. *See also Ruth v. Triumph Partnerships*, 577 F.3d 790, 796-97 (7th Cir. 2009) (rejecting debt buyer's argument that it fell within the definition of creditor "because it purchases delinquent debt thereby becoming one 'to whom a debt is owed'" as foreclosed by

---

F.3d at 359; *Schlosser,* 323 F.3d at 536; *Check Investors*, 502 F.3d at 173. Thus, a defendant who is a creditor is not a debt collector for the purposes of applying the Act to a specific debt.

the decisions in *Schlosser* and *Mckinney*).

As explained by the Seventh Circuit, "[f]ocusing on the status of the obligation asserted by the assignee is reasonable in light of the conduct regulated by the statute":

> For those who acquire debts originated by others, the distinction drawn by the statute – whether the loan was in default at the time of the assignment – makes sense . . . . If the loan is current when it is acquired, the relationship between the assignee and the debtor is, for purposes of regulating communications and collection practices, effectively the same as that between the originator and the debtor. If the loan is in default, no ongoing relationship is likely and the only activity will be collection.

*Schlosser,* 323 F.3d at 538; *accord McKinney*, 548 F.3d at 501. *See also Check Investors*, 502 F.3d at 173 ("[P]ursuant to § 1692a, Congress has unambiguously directed our focus to the time the debt was acquired in determining whether one is acting as a creditor or debt collector under the FDCPA").

Thus, these courts read the definition of "debt collector" in §1692a(6) in conjunction with the definition of "creditor" in §1692a(4) to find that a debt collector includes entities who regularly collect defaulted debts on behalf of their owner, as well as entities who acquire and collect defaulted debts for their own account. Thought of another way, a debt buyer is collecting "for" (in place of)

12

another - the originating creditor.[4]

This interpretation is consistent with the language of the statute, as well as the Act's legislative purpose. The court below focused on a clause in isolation and gave it a meaning that is at odds with its context. *See Healthkeepers*, 642 F.3d at 471 ("'The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole'" (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997))). *See also Holmes v. Telecredit Serv. Corp.*, 736 F. Supp. 1289, 1292-93 (D. Del. 1990) (noting, in holding that purchaser of defaulted debt was subject to the FDCPA, that "'one cannot take a clause out of context and give it a meaning which is inconsistent with the overall purpose of the legislation'") (quoting *Heredia v. Green*, 667 F.2d 392, 399 (3d Cir. 1981) (Gibbons, J., dissenting)).

This reading also comports with the principle that exemptions to remedial statutes are to be narrowly construed. *See Olsen v. Lake Country, Inc.,* 955 F.2d 203, 206 (4th Cir. 1991) ("[E]xemptions from remedial statutes are to be construed narrowly"); *Caprio v. Healthcare Revenue Recovery Grp., LLC,* 709 F.3d 142, 148 (3d Cir. 2013) ("As remedial legislation, the FDCPA must be broadly construed in

---

[4] The definition of "for" includes "in place of" and "with respect to." Merriam-Webster.com (May 7, 2015), http://www.merriam-webster.com/dictionary/for.

13

order to give full effect to these purposes"); *Johnson v. Riddle,* 305 F.3d 1107, 1117 (10th Cir. 2002) (explaining that because the FDCPA is a remedial statute, it is construed liberally in favor of the consumer).

Entities that purchase defaulted consumer debts for collection are clearly within the scope of what Congress intended to regulate when it enacted the statute. Accordingly, Santander is properly considered a debt collector under the statutory text of the FDCPA. As explained below, this reading is underscored by the legislative history of the statute.

### 2. THE LEGISLATIVE HISTORY AND PURPOSE OF THE FDCPA CONFIRM THAT PURCHASERS OF DEFAULTED CONSUMER DEBTS ARE DEBT COLLECTORS UNDER THE FDCPA

The holdings of the *Kimber* court and the appellate courts that have considered the issue are consistent with the legislative history of the FDCPA. In particular, those holdings are buttressed by a debate over a proposed amendment in the Senate committee that drafted the FDCPA. Senate Comm. on Banking, Housing & Urban Affairs, Markup Session: S. 1130 Debt Collection Legislation 2-3 (June 30, 1977) ("June 30, 1977 Hearing").

The FDCPA was drafted by the Senate Committee on Banking, Housing & Urban Affairs based on a combination of bills, but primarily H.R. 5294, 95th Cong. (1977). *See* S. Rep. No. 95–382, 95th Cong., 1st Sess., reprinted in 1977

14

U.S. Code Cong. & Admin. News 1695, 1696.  Before the Senate Committee's

changes, H.R. 5294 contained a very simple definition of debt collector with

exceptions only for governments and lawyers.  The phrase "debt collector" meant

"any person who engages in any business the principal purpose of which is the

collection of any debt, or any person who directly or indirectly collects or attempts

to collect a debt owed or due or asserted to be owed or due another, and who uses

any instrumentality of interstate commerce in connection with such collections."

The exceptions, including the Assignee Exception, were added by the Senate

Committee.

   After the Senate Committee made its changes, it held two markup hearings

on the bill.  During the first mark-up hearing, Senator Schmitt proposed to exempt

banks and retail organizations engaged in debt collection through "reciprocal

collection arrangements," which were common in the banking industry at the time.

June 30, 1977 Hearing, at 16.  In a reciprocal collection arrangement, a local bank

agreed to collect defaulted debts of debtors who moved to the local bank's area for

another bank that did not have a local presence, in exchange for reciprocal

treatment for customers that moved to the other bank's territory.  *Id*. at 18.

   Mr. Lewis Taffer, the Committee counsel, explained why the proposal was

undesirable: "[T]he reason the Committee print specifically would cover reciprocal

agreements is because the philosophy of this bill is to cover all situations in which

15

third parties who have been unrelated to the original debt come on to the scene for the first time to collect a delinquent debt." *Id*. at 17-18.

Senator Riegle, the sponsor of the bill, added, "the concern about third parties, whether they be banks or anybody else that put themselves in business to collect debts where they were not a party to the original transaction, their good will is not on the line, their customer relationship is not on the line." *Id.* at 23.  He continued:

> When you are collecting a debt that you had no involvement in the origination of, you are taking it on as a third party, that you are expected to follow the same ethical practices that everybody else in this business follows because you are electing to become a third-party debt collector.

*Id.* at 24.

A particularly revealing exchange then occurred.  The Committee chairman commented that exempting banks would create "unfair competition" because small collectors would be regulated, and banks would not.  *Id.* at 24-25.  Senator Morgan, a proponent of the amendment, replied: "Mr. Chairman, I don't believe you can find a bank in America that wants to get into the debt collection business of the kind we are talking about.  I don't know of any that collect any debts other than for themselves except a reciprocal situation." *Id.* at 25.  Senator Riegle then forcefully responded:

16

All we do here are prohibit practices that ought to be prohibited. As you say, any self-respecting bank that wants to get into the debt collection business, collecting from people who are not their customers but somebody else's customers, if they want to take themselves into that business that is their decision. If they do, then they would fall within the scope of living within the same bounds of ethical practices that everybody else in the debt collection business is in.

*Id.*

The proposed amendment was defeated. *Id.* at 55. Indeed, the Committee Report specifically noted that "[t]he definition of [debt collector] would include 'reciprocal collections.'" S. Rep. No. 95–382, 95th Cong., 1st Sess., reprinted in 1977 U.S. Code Cong. & Admin. News 1695, 1696.

As this debate over the proposed amendment captures, Congress aimed to prevent any party from "collect[ing] from people who are not their customers but somebody else's customers" without adhering to "the same bounds of ethical practices that everybody else in the debt collection business is in." June 30, 1977 Hearing, at 25. Congress intended the FDCPA to apply to parties who "were not a party to the original transaction" because "their good will is not on the line, their customer relationship is not on the line." *Id.* at 23. Congress wanted to deter an entity such as a debt buyer from unfairly competing with other debt collectors by avoiding the ethical standards that were being established in the FDCPA. *See id.* at 25. Although the FDCPA was passed before the rise of the debt buying industry,

17

Congress's intent was to "cover all situations in which third parties who have been unrelated to the original debt come on to the scene for the first time to collect a delinquent debt," thus including debt buyers such as Santander here. *Id*. at 17-18.

### 3. THE WEIGHT OF AUTHORITY OVER THE PAST TWENTY-EIGHT YEARS SINCE *KIMBER* SUPPORTS APPELLANTS' POSITION

Virtually every court that has considered the question has concluded, as the cases cited above, that an entity that purchases and regularly collects on defaulted consumer debts originated by another is a debt collector under the FDCPA. *See, e.g.*, *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-04 (3d Cir. 2000) (assignee of defaulted debt met the FDCPA's definition of "debt collector"); *Maloney v. LVNV Funding LLC*, No. 3:06-CV-0452, 2006 WL 3006484, at *5 (N.D. Tex. Oct. 20, 2006) ("[E]ven though they collect debts for themselves, they are still debt collectors within the meaning of § 1692a(4) and § 1692a(6) of the Act, because the debts were already in default when they were assigned to the companies"); *Larsen v. JBC Legal Grp., P.C.*, 533 F. Supp. 2d 290, 301 (E.D.N.Y. 2008) ("[T]hose who are assigned a defaulted debt are not exempt from the FDCPA . . . ."); *Winterstein v. CrossCheck, Inc.*, 149 F. Supp. 2d 466, 469-73 (N.D. Ill. 2001) (finding that party collecting a debt originally owed to another was not a creditor because it received the assignment of the debt in default; noting that "[t]he assignee exception to the Act's definition of creditor found in § 1692a(4)

18

specifically applies in this context"); *Farber v. NP Funding II L.P.*, No. CV-96-4322 (CPS), 1997 WL 913335, at *3 (E.D.N.Y. Dec. 9, 1997) ("[T]hose who are assigned a defaulted debt are not exempt from the FDCPA if their principal purpose is the collection of debts or if they regularly engage in debt collection"); *Holmes*, 736 F. Supp. at 1293 (holding that a third party that regularly collects debts "cannot escape the spirit of the Act merely by the technicality of purchasing the debt upon default so that title technically rests in itself"). *See also Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 (11th Cir. 2014) ("Undisputedly, [the defendant debt buyers] are debt collectors and thus subject to the FDCPA").

And courts agree that the legislative history of the FDCPA firmly reinforces this conclusion. In the words of *Kimber*: "With §§ 1692a(4) and 1692a(6)(A), Congress clearly sought to exclude creditors—that is, those who extend credit and collect their own debts—from the Act's coverage; such persons are, in the words of the Senate Report, 'restrained by the desire to protect their good will.'" 668 F. Supp. at 1486. On the other hand,

> [W]hen these so-called creditors are in effect merely in the business of collecting stale debts rather than extending credit, they are no longer true creditors but debt collectors who, in the words of the Senate Report, 'are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them'; they are simply independent collectors of past due debts and thus clearly fall within the group Congress intended the Act to cover.

19

*Id. See also, e.g.*, *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir. 1985)

("The legislative history of section 1692a(6) indicates conclusively that a debt

collector does not include the consumer's creditors, a mortgage servicing company

or an assignee of a debt, as long as the debt was not in default at the time it was

assigned"); *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F.

Supp. 2d 502, 525 (D. Md. 2013) (noting that the logic behind the Act's legislative

history "extends to the debt purchaser context").

    Thus, the overwhelming weight of authority concludes that a debt buyer who

acquires defaulted debt to collect for (in the place of) another falls within the

definition of "debt collector" under the FDCPA.[5]

---

[5] The proposition is so firmly established that two of the largest debt buying industry associations readily conceded the point in a brief filed in the Supreme Court in 2009. *See* Brief for the Commercial Law League of America and DBA International as *Amici Curiae* Supporting Respondents at 12, *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) (No. 08–1200) ("Although 15 U.S.C. § 1692a(6) exempts creditors from the definition of 'debt collector,' debt buyers who purchase debts after default do not enjoy the benefits of that exemption and they are treated as 'debt collectors' for FDCPA purposes"). Indeed, the U.S. District Judge in the case below has authored several opinions applying the FDCPA to debt buyers. *See Bradshaw v. Hilco Receivables*, 765 F. Supp. 2d 719 (D. Md. 2011) (denying motion to dismiss FDCPA claims against a debt-buyer defendant); *Winemiller v. Worldwide Asset Purchasing*, No. 1:09-cv-02487, 2011 WL 1457749 (D. Md., Apr. 15, 2011) (granting summary judgment against a debt buyer on several FDCPA claims).

20

**4. THE FEDERAL AGENCIES CHARGED WITH ENFORCING THE FDCPA HAVE CONSISTENTLY AGREED THAT PURCHASERS OF DEFAULTED CONSUMER DEBTS ARE SUBJECT TO THE FDCPA**

The Federal Trade Commission ("FTC") and the Consumer Financial Protection Bureau ("CFPB"), which share enforcement authority with respect to the FDCPA, take the position that purchasers of defaulted consumer debts are "debt collectors" under the FDCPA.

The FTC's long-standing interpretation of the Act's coverage is reflected in the various enforcement actions that the FTC has brought under the FDCPA against debt buyers. *See, e.g.*, *Check Investors*, 502 F.3d at 172-74; Press Release, FTC, Debt Buyer/Debt Collection Companies and Their Principals Settle FTC Charges (Mar. 24, 2004) (announcing settlement of suit against a debt buyer that the FTC alleged to have "engaged in systematic and widespread violations of the [FDCPA]"); Press Release, FTC, At FTC's Request, Court Orders Halt to Debt Collector's Illegal Practices, Freezes Assets (Aug. 1, 2013) (announcing halt to collection operation of debt buyer that "allegedly extorted payments from consumers by using false threats of lawsuits and calculated campaigns to

21

embarrass consumers by unlawfully communicating with family members, friends,

and coworkers," in violation of the FDCPA).[6]

Relying on *Kimber*, a 1993 FTC staff opinion letter concluded,[7] "a party that

purchases delinquent accounts from the party to which the debts were originally

owed and attempts to collect them from the consumer debtors fits clearly within

[the definition of debt collector]." [8]  Letter from Clarke W. Brinckerhoff to

---

[6] As set forth in FTC's complaint filed in the U.S. District Court for the Central District of California (*FTC v. Asset & Capital Management Group*, Case No. CV13-5267 DSF): "Defendants are third-party debt collectors that purchase portfolios of past-due consumer debt, primarily credit card debt, and collect payment on their own behalf from consumers nationwide."

[7] In *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000), the Supreme Court explained that interpretations such as those in opinion letters are "entitled to respect" to the extent that the interpretation has the "power to persuade."  Although this type of interpretation is generally not entitled to *Chevron*-style deference, "the well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Bragdon v. Abbott,* 524 U.S. 624, 642 (1998) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944).  In other words, "an agency's interpretation may merit some deference whatever its form."  *United States v. Mead Corp.,* 533 U.S. 218, 234 (2001).  The persuasive weight of a non-controlling agency interpretation or opinion depends upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade[.]"  *Skidmore*, 323 U.S. at 140.  A number of courts have found FTC letters to be persuasive and given them weight when interpreting the FDCPA.  *See, e.g.*, *Romine v. Diversified Collection Servs., Inc.*, 155 F.3d 1142, 1147 (9th Cir. 1998).  *See also Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1327 (7th Cir. 1997) ("[W]e acknowledge and give due weight to the FTC's informed interpretation of the term 'debt'").

[8] This view is echoed in a number of FTC reports.  *See, e.g.*, FTC, *Collecting*

22

Kimberlee Arbuckle (Dec. 22, 1993), FTC Informal Staff Opinion Letter.

According to the opinion letter, "[t]he party is attempting to collect debts that were

'owed or due another' and the fact that title to the accounts is passed to the

collector in no way changes that fact." *Id*. Thus, both the FTC and its staff

consistently have taken the view that an entity that purchases a debt in default is a

debt collector under the FDCPA.

The Dodd-Frank Wall Street Reform and Consumer Protection Act, which

created the CFPB in 2011, charged the agency with shared oversight and

enforcement responsibilities for the FDCPA.  In addition, the Dodd-Frank Act

granted rulemaking authority under the FDCPA to the CFPB, making it the first

federal agency to possess the authority to issue substantive rules for debt collection

under this statute.

On November 12, 2013, the CFPB filed an advance notice of proposed

rulemaking in the Federal Register soliciting public comments to assist the agency

in developing proposed rules for debt collection.  CFPB, Advanced Notice of

---

*Consumer Debts: The Challenges of Change – A Workshop Report* 5 (February 2009) ("The FDCPA applies to third-party 'debt collectors,' a term that includes contingency agencies, collection law firms, and debt buyers"); FTC, *Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration* 6 n.15 (July 2010) ("Debt buyers – persons who collect debt on their own behalf that they have purchased from creditors or debt collectors – are covered by the FDCPA if the accounts were in default at the time the debt buyers purchased them").

23

Proposed Rulemaking of November 12, 2013, Debt Collection (Regulation F), 78

Fed. Reg. 67848 ("ANPRM"). The CFPB indicates throughout the ANPRM that

debt buyers are to be covered under the regulations. *See id.* Other CFPB materials

also evidence the agency's understanding that debt buyers are included within the

FDCPA's coverage. For example, the CFPB explicitly stated in a 2013 bulletin

that the agency issued regarding unfair and deceptive practices in the collection of

consumer debts that "[t]he FDCPA generally applies to third-party debt collectors,

such as collection agencies, *debt purchasers*, and attorneys who are regularly

engaged in debt collection." CFPB Bulletin 2013-07, Prohibition of Unfair,

Deceptive, or Abusive Acts or Practices in the Collection of Consumer Debts

(emphasis added).[9] *See also, e.g.*, CFPB, 2013 Fair Debt Collection Practices

Annual Report 4 n.14 (March 2013) ("'Third-party debt collectors' include . . .

debt buyers collecting on debts they purchased in default").[10]

### 5. SANTANDER'S POSITION WOULD HAVE BROAD IMPLICATIONS FOR THE MASSIVE AND GROWING DEBT BUYER INDUSTRY

The debt buying industry, which did not exist when the FDCPA was passed

in 1977, has grown massive in the past two decades. A ruling that removes debt

---

[9] http://files.consumerfinance.gov/f/201307_cfpb_bulletin_unfair-deceptive-abusive-practices.pdf

[10] http://files.consumerfinance.gov/f/201303_cfpb_ March_FDCPA _Report1.pdf

buyers from coverage under the FDCPA would take away an important tool in curbing the potential abuses of this industry, and also competitively disadvantage other participants in the debt collection market who must comply with the statute's provisions.

As the CFPB recently stated, the rise of the debt buying represents one of the most significant changes to the debt collection industry since the passage of the FDCPA in 1977.  CFPB, Fair Debt Collection Practices Act Annual Report 7 (2014).[11]  The FTC noted that "[t]he practice of creditors selling consumer debts on a large scale has its origins in the savings and loan crisis of the late 1980s and early 1990s."  FTC, *The Structure and Practices of the Debt Buying Industry* 12 (2013) (hereinafter, "Structure and Practices").[12]  The debt buying industry has grown rapidly since then.  One Federal Reserve report shows the amount of consumer debt being sold to debt buyers growing from an estimated $6 billion in 1993 to $128 billion in 2005.  Robert M. Hunt, *Collecting Consumer Debts in America*, Fed. Res. Bank of Philadelphia Bus. Rev. 15 (Second Quarter 2007).[13]

---

[11] http://files.consumerfinance.gov/f/201403_cfpb_fair-debt-collection-practices-act.pdf

[12] www.ftc.gov/os/2013/01/debtbuyingreport.pdf

[13] www.philadelphiafed.org/research-and-data/publications/business-review/2007/q2/hunt_collecting-consumer-debt.pdf

25

The following graph from that article shows the meteoric rise in debt buying over that period:



*Id*.

The large amount of money involved has attracted numerous new entrants into the debt buying business.  In 2010, the Wall Street Journal reported that "[m]ore than 450 debt buyers scooped up an estimated $100 billion in distressed loans last year."  Jessica Silver-Greenberg, *Boom in Debt Buying Fuels Another Boom - In Lawsuits*, Wall St. J., Nov. 29, 2010, at A1.[14] According to a 2013

---

[14] http://online.wsj.com/article/SB20001424052702304510704 5755622129191 79410.html

FTC report, there are "hundreds, if not thousands, of entities of varying sizes that purchase debts."  Structure and Practices 14.

Debt buying has raised significant consumer protection concerns, many of which stem from the limited information that is actually transferred at the time of the purchase of the defaulted debts.  *See id.* at i.  The FTC's study found that debt buyers typically "obtained very few documents related to the purchased debts at the time of sale or after purchase."  *Id*. at iii.  The FTC also found that debt buyers only receive documentation for approximately 12% of the debts they attempt to collect.  *Id*. at 35.  This creates an environment that is ripe for abuse.  *See* Dalié Jiménez, *Dirty Debts Sold Dirt Cheap*, 52 HARV. J. ON LEGIS. 41, 76-83 (2015) (explaining how the limited documentation in the typical consumer debt sale transaction results in violations of the FDCPA); Peter A. Holland, *The One Hundred Billion Dollar Problem in Small Claims Court: Robo–Signing and Lack of Proof in Debt Buyer Cases*, 6 J. BUS. & TECH. L. 259 (2011) (describing how debt buyers aggressively use small claims courts to procure default judgments without adequate documentation).

The allegations set forth in the FTC's complaint against debt-buyer Capital Acquisitions and Management Corp. ("CAMCO") are illustrative of the unscrupulous practices that are common in the industry.  In 2004, the FTC filed suit against CAMCO, its subsidiary, and its principals after CAMCO "engaged in

27

systematic and widespread violations of the [FDCPA]." *See* Press Release, FTC, Debt Buyer/Debt Collection Companies and Their Principals Settle FTC Charges (Mar. 24, 2004).[15]  The FTC described CAMCO as a "'debt buyer' – a company that buys old debts well past the statute of limitations and attempts to collect them." *Id*.  Among other violations, CAMCO's collectors threatened consumers with arrest, used profanity, called consumers at their workplaces, and refused to heed the consumers' requests to stop calling. *Id*. CAMCO engaged in similar misconduct even after settling the FTC's initial lawsuit, ultimately being shut down by a court-appointed receiver later that year when the violations continued. *See* Press Release, FTC, Debt Collector Settles with FTC for Abusive Practices (Mar. 12, 2007).[16]

Indeed, the debt buying industry's mistreatment of consumers, and misuse of the legal system, is well documented.  *See, e.g.*, Neil L. Sobol, *Protecting Consumers from Zombie-Debt Collectors*, 44 N.M. L. REV. 327 (2014) (describing how some unscrupulous debt buyers will attempt to obtain an "acknowledgement" from a consumer through trickery or coercion in order to revive an otherwise time-barred debt); Rick Jurgens & Robert J. Hobbs, *The Debt Machine: How the*

---

[15] https://www.ftc.gov/news-events/press-releases/2004/03/debt-buyerdebt-collection-companies-and-their-principals-settle

[16] https://www.ftc.gov/news-events/press-releases/2007/03/debt-collector-settles-ftc-abusive-practices

*Collection Industry Hounds Consumers and Overwhelms Courts*, NAT'L
CONSUMER L. CTR. 18 (July 2010)[17] (describing how debt buyers pursue
consumers "even when claims are erroneous, disputed, already settled, discharged
in bankruptcy or older than allowed by a jurisdiction's statute of limitations").  *See
also* ANPRM, 78 Fed. Reg. at 67878 (noting concerns that "collectors may make
unfair or deceptive claims about consumer indebtedness" in documents filed in
state debt collection litigation).

    As the Third Circuit remarked of the defendant debt buyer in *Check
Investors*, 502 F.3d at 172-73, "[n]o merchant worried about goodwill or the future
of his/her business would have engaged in the kind of conduct that was the daily
fare of the collectors at Check Investors."  *Id*. at 174.  That debt buyer's "primary
*modus operandi* was to accuse consumers of being criminals or crooks, and
threatening them with arrest and criminal or civil prosecution."  *Id*. at 163.  The
Third Circuit found that "[t]he collectors working there resorted to whatever
harassment appeared likely to succeed; the only limit appears to have been a given
tactic's likelihood of bearing fruit by yielding a profit."  *Id*. at 174.

    In sum, the relationship between debt buyers and consumers embodies the
exact dynamic that Congress determined fostered abuses and aimed to regulate in
passing the FDCPA.  This industry is comprised of hundreds or thousands of

---

[17] http://www.nclc.org/images/pdf/pr-reports/debt-machine.pdf

29

companies, which buy approximately one hundred billion dollars of defaulted consumer debt annually in the United States.  Yet Santander's position would exempt this entire industry from the FDCPA.  The ruling below, if affirmed, would open a massive loophole in the FDCPA "big enough to devour all of the protections Congress intended in enacting that legislation." *Check Investors*, 502 F.3d at 172-73.

### E. <u>CONCLUSION</u>

For the forgoing reasons, *Amici Curiae* respectfully request that the District Court's decision granting Santander's motion to dismiss be reversed.

Date: June 19, 2015                              Respectfully submitted,


                                         /s/ Joseph Mack_____
                                         Joseph Mack
                                         Catherine Gonzalez
                                         Civil Justice, Inc.
                                         520 W. Fayette Street
                                         Suite 410
                                         Baltimore, MD 21201
                                         410-706-7985
                                         jmack@civiljusticenetwork.org
                                         *Counsel for Non-Profit Amici*

                                         Brian E. Frosh
                                         Attorney General
                                         State of Maryland
                                         200 St. Paul Place, 20th Floor
                                         Baltimore, MD 21202

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. <u>15-1187</u>          **Caption:** <u>Henson v. Santander Consumer USA, Inc.</u>

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓]      this brief contains _____6,984_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]      this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓]      this brief has been prepared in a proportionally spaced typeface using
<u>Microsoft Word</u>_____ [*identify word processing program*] in
<u>Times New Roman</u>_____ [*identify font size and type style*]; **or**

[ ]      this brief has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) <u>Joseph Mack</u>_____

Attorney for <u>Non-Profit Amici</u>_____

Dated: <u>6/19/2015</u>_____

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 19th day of June, 2015, a copy of this Brief of *Amici Curiae* the National Consumer Law Center, Inc., the National Association of Consumer Advocates, Inc., Civil Justice, Inc., Public Justice Center, Inc., Maryland Consumer Rights Coalition, Inc. and the Attorney General of Maryland in Support of Plaintiffs-Appellants and in Support of Reversal was served via the Court's Electronic Filing System (ECF) and e-mail upon the following counsel of record:

Steven T. Fowler, Esq.
sfowler@reedsmith.com
REED SMITH LLP
3110 Fairview Park Drive
Suite #1400
Falls Church, VA 22042
703-641-4262

Travis Sabalewski
REED SMITH LLP
Riverfront Plaza - West Tower
901 E. Byrd Street
Suite #1700
Richmond, VA 23219
tsabalewski@reedsmith.com
804-344-3442

Tillman J. Breckenridge, Esq.
tbreckenridge@reedsmith.com
REED SMITH LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, DC 20005
202-414-9285

*Attorneys for Defendant - Appellee*

Cory L. Zajdel
Z LAW, LLC
301 Main Street, Suite #2-D
Reisterstown, MD 21136
clz@zlawmaryland.com
(443) 213-1977

*Attorney for Plaintiffs-Appellants*


/s/ Joseph Mack
Joseph S. Mack