**RECORD NO. 15-2338**

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

JAMES KLEMIC; JOAN KLEMIC;
CHARLOTTE REA; PETER J. OSBORNE; KAREN F. OSBORNE,

*Plaintiffs - Appellants,*

v.

DOMINION TRANSMISSION, INC.;
ATLANTIC COAST PIPELINE LLC, a/k/a ACP,

*Defendants - Appellees,*

COMMONWEALTH OF VIRGINIA,

*Intervenor/Defendant - Appellee,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT CHARLOTTESVILLE

**REPLY BRIEF OF APPELLANTS**

Neal L. Walters
SCOTT KRONER, PLC
418 East Water Street
P.O. Box2737
Charlottesville, VA 22902
(434) 296-2161

*Counsel for Plaintiffs-Appellants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................... ii

ARGUMENT ......................................................................................1

    I.    THE VIRGINIA SUPREME COURT ACKNOWLEDGES A PROPERTY OWNER'S COMMONLAW RIGHT TO EXCLUDE OTHERS UNLESS A RECOGNIZED EXCEPTION EXISTS; SUCH EXCEPTIONS ARE STRICTLY CONSTRUED AND NONE IS APPLICABLE TO THE PRESENT CASE. ............................4

    II.   SURVEYS ARE NOT REQUIRED TO SUBMIT AN APPLICATION TO FERC, AND FERC REGULATIONS SPECIFICALLY CONTEMPLATE THAT OWNERS MAY NOT CONSENT TO SURVEYS......................................................13

    III.  THE 2012 AMENDMENT TO THE VIRGINIA CONSTITUTION APPLIES TO THE PRESENT CASE AND GIVES THE PLAINTIFFS GREATER PROTECTIONS..............................................15

CONCLUSION ..................................................................................18

CERTIFICATE OF COMPLIANCE....................................................19

CERTIFICATE OF SERVICE .............................................................20

i

# TABLE OF AUTHORITIES

## CASES

*Birmingham-Trussville Iron Co. v. Allied Engineers*,
    144 So. 1 (Ala. 1932)...................................................................................8

*Carson v. City of Richmond,*
    75 S.E. 119 (Va. 1912) ...............................................................................6

*Chesapeake & O. Ry. Co. v. Walker*,
    40 S.E. 633 (Va. 1902) ...........................................................................6, 7

*Fisher v. Smith,*
    32 Va. 611 (1833).........................................................................................7

*Jacobsen v. Superior Court of Sonoma Cty., Dep't No. 2*,
    219 P. 986 (Cal. 1923)................................................................................6

*Lucas v. South Carolina Coastal Council*,
    505 U.S. 1030 (1992) ..................................................................................4

*O'Connor v. Smith*,
    49 S.E.2d 310 (Va. 1948) ...........................................................................6

*Painter v. St. Clair*,
    34 S. E. 989 (Va. 1900) ..............................................................................6

*Pogue v. Kamo Elec. Co-op, Inc.*,
    795 S.W.2d 566 (Mo. Ct. App. 1990) ........................................................9

*Root v. Kamo Elec. Co-op., Inc.*,
    699 P.2d 1083 (Okla. 1985) .......................................................................9

*Tate v. Ogg*,
    195 S.E. 496 (Va. 1938) .............................................................................4

ii

*Walker v. City of Warner Robbins*,
  422 S.E.2d 555 (Ga. 1992) ...................................................................9

## STATUTES & REGULATIONS

Va. Code Ann. § 56-49.01 ............................................................. 3, 8, 11

18 C.F.R. § 157.1 ..............................................................................13

18 C.F.R. § 157.14 ............................................................................13

18 C.F.R. § 157.8 ..............................................................................14

## RULES

Fed. R. Civ. P. 12(b)(6).......................................................................8

## CONSTITUTION

Va. Const. art. I, § 11 ...................................................................15, 16

# **ARGUMENT**

Despite the complexity of the parties' briefs (the Commonwealth's alone contains almost 200 footnotes), the path to the dispute that brings the parties before the Court is a relatively simple one. Dominion wants to come onto the Plaintiffs' private property to conduct "surveys." The Plaintiffs have declined to give Dominion permission to do so. Dominion asserts that, by virtue of the challenged statute it can come on the Plaintiffs' private property, conduct the surveys as described in detail in the Plaintiffs' opening Brief, not compensate the Plaintiffs for this intrusion and there is nothing the Plaintiffs can do about it. Moreover, Dominion and the Commonwealth assert that this raises no constitutional issue.

Dominion is a private, for-profit company that desires to construct an interstate natural gas pipeline. It participates in a competitive industry with other companies that also want to build natural gas pipelines in the same general area. It cannot build the pipeline unless and until the Federal Energy Regulatory Commission ("FERC") awards it a certificate of public convenience and necessity ("CPCN").

The regulatory requirements for an application to FERC for pipeline approval are substantial. While the regulations articulate what information an applicant must provide, they do not mandate the methodology by which an applicant

1

might obtain that information or empower an applicant in any particular way to gather that information.

Dominion no doubt believes that the more detailed its application more likely it is that the application will be approved, and the more likely it will be to prevail over competitors to the Project and over opponents to the Project. As a result, Dominion wants to be able to conduct physical surveys of properties along the proposed route of the Project as it believes this will provide it with more information for its application.

Unless and until FERC approves the application, however, Dominion lacks the power to exercise eminent domain under federal law. In addition, because federal law does not authorize provision of natural gas transmission services without the CPCN, Dominion is not an "authorized provider" of public utility services with respect to the Project and it therefore lacks condemnation rights under Virginia law at the present time. Because Dominion lacks eminent domain power, it cannot commence condemnation proceedings which would provide it with the right to enter for survey under Virginia law, nor can it exercise the pre-condemnation entry for survey rights available under Virginia's "quick take" condemnation laws.

The absence of a right to enter for survey does not create an issue for Dominion where landowners along the route of the Project agree to allow a survey to

take place. When a landowner does object, however, Dominion has a problem. It cannot simply enter upon private land without the consent of the owner; that would constitute a trespass. At the same time, though, the refusal of a landowner precludes Dominion from submitting a fully surveyed route to FERC and it presumably feels that this puts it at a competitive disadvantage when submitting its application to FERC.

        The Virginia General Assembly, in an apparent effort to assist natural gas companies with this quandary, enacted Va. Code Ann. § 56-49.01, which purports to give natural gas companies the right to enter onto private property without the consent of the owner to conduct surveys without any requirement that condemnation be forthcoming or even contemplated. In fact, § 56-49.01 is specifically intended for situations where condemnation is inapplicable. The right to enter for survey is not linked to any necessity on the part of the natural gas company to determine what portion of the property might need to be condemned; instead it purports to allow entry for survey simply to "satisfy" regulatory requirements or for the "improvement or straightening of its line or works, changes of location or construction, or providing additional facilities."

        Section § 56-49.01 exists to give private for-profit companies a tool to gain a competitive edge in their market at the expense of private property owners'

fundamental right to exclude others from their property, and it does this without compensating the owners for the use of their property. This is precisely the type of conduct prohibited the Fifth Amendment.

## I. THE VIRGINIA SUPREME COURT ACKNOWLEDGES A PROPERTY OWNER'S COMMONLAW RIGHT TO EXCLUDE OTHERS UNLESS A RECOGNIZED EXCEPTION EXISTS; SUCH EXCEPTIONS ARE STRICTLY CONSTRUED AND NONE IS APPLICABLE TO THE PRESENT CASE.

One thing the parties do agree on in this case is that state law generally defines the contours of property rights protected by the Fifth Amendment. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1030 (1992). Because the present case involves a challenge to a statute of the Commonwealth of Virginia, at the end of the day it is only the law of Virginia that matters.

The Virginia Supreme Court has long recognized that the citizens of Virginia inherited from the common law of England at the time of the founding of the Commonwealth the right "to the *exclusive* and peaceful enjoyment of [their] own land, and to redress if such enjoyment shall be wrongfully interrupted by another." *Tate v. Ogg*, 195 S.E. 496, 498 (Va. 1938) (emphasis added). Thus the starting point

4

of the analysis is the fact that Virginia recognizes the fundamental right of the owner of private property to exclude others.[1]

The Defendants, particularly the Commonwealth, devote substantial time to setting up another straw argument that the Plaintiffs never made—namely that there is a "categorical right" to exclude others—and then knocking this argument down. The Plaintiffs' never made such an obviously implausible argument. Rather, the Plaintiffs' position is that no recognized exception to the right to exclude saves the statute being challenged in this case.

Virginia, the Plaintiffs agree, has long recognized exceptions to the fundamental right to exclude others, including the right of the sovereign to enter, or to permit others acting in its stead to enter, for certain purposes. However, in Virginia "the well-settled rule of construction is that … when … [a statute is] in dero-

---

[1] The Commonwealth devotes several pages of its Brief to addressing an argument never really pursued by the Plaintiffs. The Commonwealth contends that "[r]ather than looking to State law for the parameters of the property right at issue here, Appellants suggest that the right to exclude is *so* fundamental that, even if State law does not protect it, the Constitution must." (Brief of the Commonwealth of Virginia ("Com. Br.") at 19). While the Plaintiffs did suggest in their opening brief that the right to exclude inheres in the very concept of *private* property, they also explicitly stated that this need not be addressed because the Virginia Supreme Court recognizes the existence of the common law right to exclude as part of the law of property in the Commonwealth, and Plaintiffs provided a pinpoint citation to the relevant case. (Appellants' Brief ("App. Br.") at 27). There is also more than a little bit of irony to the Commonwealth's protestation as the Commonwealth itself goes on to devote substantial time to a review of Restatements and other authorities which are themselves not the law of Virginia.

5

gation of common law, it must be strictly construed." *O'Connor v. Smith*, 49 S.E.2d 310, 313 (Va. 1948).[2]

For more than a century and a half Virginia's rule of strict construction has nowhere been more rigorously enforced than in the area of condemnation. *See, e.g., Carson v. City of Richmond,* 75 S.E. 119, 119-20 (Va. 1912) (stating "It is well settled in this state that, in proceedings like this [condemnation proceeding], the power conferred must be strictly construed, and the manner of executing it carefully observed and followed."); *Chesapeake & O. Ry. Co. v. Walker*, 40 S.E. 633, 636 (Va. 1902) (stating "All grants of power by the government are to be strictly construed, and this is especially true with respect to the power of eminent domain, which is more harsh and peremptory in its exercise and operation than any other."). The Court has frequently overturned decisions for reasons that can only be described as picayune. *See, e.g., Painter v. St. Clair*, 34 S. E. 989, 991 (Va. 1900) (overturning condemnation award where one highway commission member was from the wrong

---

[2]As discussed in the Appellants' opening Brief, this rule of strict construction is hardly unique to Virginia.  See, e.g., *Jacobsen v. Superior Court of Sonoma Cty., Dep't No. 2*, 219 P. 986, 989 (Cal. 1923) (stating "This public right, however, has always and everywhere been limited and safeguarded by express provisions of the Constitutions and statutes of the several states, and it has been uniformly held that being in invitum and in derogation of the common right, its exercise is strictly defined and limited by the express terms of the Constitution or statute creating it.)

district in county); *Fisher v. Smith,* 32 Va. 611, 612 (1833) (reversing condemnation order regarding a road because the viewers had not been sworn). Indeed, the Virginia Supreme Court has gone so far as to colorfully state that giving a liberal construction to such statutes would be "sinning against the rights of property." *Walker*, 40 S.E. at 636.

As the foregoing authorities (and those set forth in the Appellants' opening Brief) demonstrate, the law of Virginia is that the citizens retain the fundamental right to exclude others from their private property unless an exception exists, and any such exception must be narrowly construed when its applicability is asserted.

The Defendants cite authorities permitting the sovereign to enter upon private property for police power purposes, e.g., to extinguish burning buildings, to apprehend fleeing criminals, and to conduct regulatory inspections, and permitting members of the public to traverse private property in extenuating circumstances, such as when adjacent public highways are blocked. These cases are easily distinguishable from the present facts. The problem for the Defendants is that such general exceptions cannot, under Virginia's strict construction jurisprudence, be expanded to provide the specific exception that the Defendants desire.

7

Coming closer to the facts of the present case, the Defendants point out that Virginia has recognized an exception to the right to exclude for surveying antecedent to a condemnation proceeding, and this is the exception that the District Court relied upon. However, the Plaintiffs in this case alleged that no condemnation proceedings were ongoing or contemplated, and that none could even be commenced unless and until FERC approved Dominion's application, and at the Fed. R. Civ. P. 12(b)(6) stage this allegation must be accepted as true. Moreover, as set forth fully in the Appellants' opening Brief, the language of the challenged statute and related condemnation statutes demonstrates that § 56-49.01 only applies outside the condemnation context. For this reason, an exception for surveying antecedent to condemnation does not immunize § 56-49.01.

Dominion characterizes the necessity that the surveying be linked to condemnation proceedings as a "novel" requirement "conjured" up by the Plaintiffs. This requirement is hardly novel, having been repeated by courts for over a century, nor is it a creation of the Plaintiffs as it is drawn from the cases cited by the Defendants in the trial court. *See, e.g., Birmingham-Trussville Iron Co. v. Allied Engineers*, 144 So. 1, 3 (Ala. 1932) (stating "The temporary right, and consequent limited immunity, [to enter for surveying] conferred by this statute, *is necessarily incident to, and preliminary of, authorized proceedings to condemn*) (emphasis

8

added; citation omitted); *Walker v. City of Warner Robbins*, 422 S.E.2d 555, 556-67 (Ga. 1992) (stating "*a prospective condemning body* has the right, *incidental to its power of eminent domain*, to enter private property in order to survey...*)* (emphasis added); *Pogue v. Kamo Elec. Co-op, Inc.*, 795 S.W.2d 566, 569 (Mo. Ct. App. 1990) (stating "such a survey *must be necessary to a condemnation that is planned and anticipated in good faith.*") (emphasis added); *Root v. Kamo Elec. Co-op., Inc.*, 699 P.2d 1083, 1090 (Okla. 1985) (stating "*Accordingly, pre-condemnation surveying is not only necessary to the exercise of the right of eminent domain, it is a part of eminent domain.*") (Emphasis added).[3] The reason for this link is simple; the sovereign has no more right to trespass upon private property than anybody else. The sovereign *does* have the right, when authorized, to condemn the fee and this necessarily includes the right to take a lesser element of title, such as the right to exclude. When the sovereign is not acting pursuant to its eminent domain rights it must stay off private property like anyone else.

The Commonwealth either misperceives or deliberately misstates the Plaintiffs' argument regarding the requirement of accompanying condemnation proceedings in order to validate an entry for survey statute. The Commonwealth suggests that the Plaintiffs' contend that the sovereign must *follow through* with

---

[3]An exhaustive citation of cases standing for the same proposition is set forth in the Appellants' opening Brief. App. Br. at 30 n.5.

condemnation proceedings in order for the entry for survey to be permissible (*see* Com. Br. at 40). This is incorrect.[4] The Plaintiffs' argument is that where there are no condemnation proceedings pending, and where the party entering for survey lacks the power to condemn at the time, and where the statute granting the right to enter for survey is limited to situations outside of condemnation context, the entry is impermissible.[5] This is not a situation where the sovereign after deliberation elects not to seek condemnation; this is a situation where no condemnation could be had at all.

There is a constitutionally significant difference between situations where a party has the power to condemn and wants to survey to determine whether to in fact condemn certain property, and situations where a private party wants to survey for private purposes entirely unrelated to condemnation. In the present case it is important to note that Dominion is not seeking to survey so that it can determine

---

[4]To the contrary, the Plaintiffs specifically acknowledged in their opening brief authorities holding that condemnation need not actually be carried out for the exception to apply. *See* App. Br. at 30 n.5.

[5]The Commonwealth cites several cases which it contends conclude that an entity need not commence or follow through to completion a condemnation proceeding before being able to enter for survey. Com. Br. at 40 n.127. However true this may be, the vast majority of extant authority quite clearly holds that regardless of whether a condemnation proceeding is commenced or concluded, the right to survey exists only as a corollary of the power to condemn; it is not the *exercise* of the power to condemn that matters, it is the *existence* of the power, vel non, that matters. *See* App. Br. at 30 n.5 and cases cited therein.

10

the final location of its pipeline route, instead it is seeking to survey to that it can submit an application for approval of a request to build a pipeline the final route of which will be determined at a later date.

The Defendants do not seriously dispute that § 56-49.01 by its terms only applies outside of the condemnation context. Moreover, as discussed above, Dominion has conceded that it cannot exercise eminent domain powers unless and until FERC approves its application. The present case is thus not one where Dominion needs to determine what land it is going to condemn and what land it is not, it is instead about a statute which permits Dominion enter for survey for the sole purpose of enhancing its application to a federal regulatory agency.

The Commonwealth in its Brief makes the ad terrorem argument that it also made in the court below, namely that a decision invalidating Va. Code Ann. § 56-49.01 "would jeopardize Virginia's other entry-for-survey statutes and those in every other State," Com. Br. at 3, and thus supposedly wreak havoc on government operations throughout the country. This could not be further from the case, and why the Commonwealth continues to make this argument is not clear (other than because of its perceived rhetorical impact). The present case in no way challenges any statute in Virginia or elsewhere that permits entry for survey that is in fact antecedent to or a part of a condemnation proceeding.   It only challenges a relatively unique Virginia

11

statute that authorizes an entity that presently lacks the power to condemn to come onto private property and conduct invasive "surveys" solely for the purpose of its business convenience. Disapproval of this idiosyncratic statute would have no impact at all on the other statutes identified by the Commonwealth.

Dominion argues that the surveying in this case is permissible because it *is* antecedent to condemnation proceedings. This argument, however, strains the commonsense meaning of the word "antecedent" past the breaking point. Dominion concedes in its brief that it has no power to actually condemn anything related to the Project at the present and will never have such a right unless and until FERC approves its application. Dom. Br. at 26. Its argument is, in essence, that *if* FERC approves its application *then* it will have the power to condemn and this will retroactively make the present surveying antecedent to such future condemnation proceedings.

While this sort of "two different states at the same time" argument may work in quantum physics, it does not work as a legal principle. It is an argument that proves far too much; any party possessing the power to condemn in the abstract would, under this approach, be able to enter upon private property within its jurisdiction at any time, and as often as it wanted, to "survey" simply by claiming that it might turn out at some point down the road that it is going to be able to condemn the

12

property and the survey may be useful in doing so.[6] The extant case law indicates the right to survey relates to a pending condemnation proceeding or one *contemplated in good faith*, not a condemnation proceeding that is the result of wishful thinking.

## II. SURVEYS ARE NOT REQUIRED TO SUBMIT AN APPLICATION TO FERC, AND FERC REGULATIONS SPECIFICALLY CONTEMPLATE THAT OWNERS MAY NOT CONSENT TO SURVEYS.

Though it strongly implies as much, Dominion is very careful in its brief not actually to assert that surveying is required (or authorized) under the applicable FERC regulations. This was for good reason, as the applicable regulations do not require surveys. *See* 18 C.F.R. §§ 157.1–157.22 (2015).[7] The District Court granted the motion to dismiss before any evidence could be adduced, but the Plaintiffs' expert testimony would also have shown that FERC does not require surveys like those proposed by Dominion (or any surveys for that matter) and that applications may be submitted without some or all of the subject properties having been surveyed. This is demonstrated by the applicable FERC regulations which specifi-

---

[6]None of the Defendants has argued that Dominion has any intention of using the surveys to decide what to condemn; the only purpose of the surveys is to determine what route to show in the application to FERC.

[7]In particular 18 C.F.R. § 157.14, which identifies the exhibits which must be attached to the permit application, does not require that any surveys be attached.

cally contemplate the submission of applications that do not contain surveys of all properties along the proposed route. *See, e.g.*, 18 C.F.R. § 157.8(a)(1) (stating "an application will not be rejected solely on the basis of: (1) Environmental reports that are incomplete because the company has not been granted access by the affected landowner(s) to perform required surveys…..").

Applicants may gather as much information as they can without conducting on-site surveying where consent cannot be obtained (which the facts of this case indicate are a small minority of the properties along the proposed route) and may submit an application based upon such data as may be obtained without surveying. That such an application may not be an optimal one may well be a commercial disadvantage for Dominion, but that is not of constitutional import. In a democratic free market system Dominion has to pay for what it wants and if it is not willing to offer the price that the market demands then it must do without. The problem in the present case is not one of recalcitrant landowners, but instead of a corporation unwilling to pay for things that serve only its own business interests.

The Commonwealth makes a similar sleight of hand argument. It contends that "[t]he survey privilege solves a classic chicken-and-egg problem; without survey rights, *the utility could not determine the best route in order to obtain the required regulatory approvals*; without the regulatory approvals, it could never

14

construct the line." Comm. Br. at 43 (emphasis added). The regulations cited above make clear that surveys are not required to obtain regulatory approval.

Once FERC grants an application the applicant will then have eminent domain powers. Once it has such powers it is free, as all entities exercising eminent domain powers are, to conduct pre-condemnation surveys to determine what portion, if any, of a parcel it ultimately wants to condemn. The present case is about an entirely difference scenario. A private business enterprise presently lacking eminent domain powers wants to submit an application to a federal agency (which does not require surveys). It thinks that by conducting such surveys it will gain a competitive advantage when submitting its application. This scenario is not covered by the exceptions to the fundamental right to exclude.

### III. THE 2012 AMENDMENT TO THE VIRGINIA CONSTITUTION APPLIES TO THE PRESENT CASE AND GIVES THE PLAINTIFFS GREATER PROTECTIONS.

The Defendants, and the District Court, argue that the Virginia Supreme Court has stated that the rights of Virginia citizens under Va. Const. art. I, § 11 are essentially coextensive with those under the Fifth Amendment and, consequently, cases decided by federal courts should be considered instructive of the rights under the Virginia Constitution.  *See, e.g.*, Comm. Br. at 45 ("As the Supreme Court of Virginia has explained, 'provisions of the Constitution of Virginia

15

that are substantively similar to those in the United States Constitution will be afforded the same meaning.'"). However valid this argument may have been in the past with respect to Article I, § 11, the assertion is absurd at the present given the 2012 amendment to the Virginia Constitution which was explicitly enacted in opposition to the broad reach of federal takings jurisprudence and designed to make the rights of Virginia citizens substantially broader, and the power of the General Assembly correspondingly narrower, than under cognate federal law. The Virginia Constitution is thus no longer in any way "substantively similar" to the federal Fifth Amendment.

The Commonwealth argues that the dramatic changes made by the 2012 amendment are not so significant because the amendment still preserved the power of a public utility to condemn. Comm. Br. at 46 n.146. Ignoring the fact that the cited passage in no way counteracts the dramatic tightening otherwise achieved by the amendment, the Commonwealth glosses over two significant distinctions: (1) Dominion is not yet exercising eminent domain powers and (2) Dominion is not authorized to provide pipeline services unless and until FERC approves the application and is thus not yet engaged in the "authorized provision" of utility services which would be permitted under the 2012 amendment.

The changes made in 2012 also seriously undercut another of the arguments made by the Defendants. Prior to the amendment the Virginia Constitution specifically gave to the General Assembly the power to define what constitutes a "public use."[8] That power was taken away in the 2012 amendment and the General Assembly no longer has any say in what constitutes a public use. The Defendants' argument that the Court should continue to defer to the legislature's determination of what is a permissible "public use" flat out ignores what took place in 2012.

This is of more than passing importance in the present case because the citizens of the Commonwealth added to their constitution a specific definition of what constitutes "public use" for a public service company. "A public service company … exercises the power of eminent domain for public use when such exercise is for the authorized provision of utility … services." The citizens went on to say that "In all other cases, a taking or damaging of private property is not for public use if the primary use is for private gain, private benefit, [or] private enterprise…." Submitting a better application to FERC does not constitute the "authorized provision of utility services," it is rather a prime example of an activity engaged in for "private gain, private benefit [or] private enterprise.

---

[8] Prior to its amendment this provision of the Virginia Constitution read: "that the General Assembly shall not pass any law … whereby private property shall be taken or damaged for public uses, without just compensation, the term 'public uses' to be defined by the General Assembly."

17

The fundamental changes made to the Virginia Constitution in 2012 demonstrate that the Plaintiffs' rights have been violated in this case and the District Court's decision to the contrary should be reversed.

## **CONCLUSION**

For the reasons set forth above, and for the reasons set forth in the Appellants' opening Brief, the decision below should be reversed and this case remanded for further proceedings.

Respectfully submitted,

JAMES KLEMIC, *et al*.,

by counsel

/s/ Neal L. Walters
Neal L. Walters, Esq. (VSB No. 32048)
Scott/Kroner, PLC
418 East Water Street
P.O. Box 2737
Charlottesville, VA 22902
(804) 296-2161

Counsel for Appellants.

18

CERTIFICATE OF COMPLIANCE WITH
TYPEFACE AND LENGTH LIMITATIONS

Counsel for the Appellant certifies:

1.   That this brief has been prepared using Microsoft Word 2010, and the typeface Times New Roman 14 point.

2.   That exclusive of the table of contents, table of authorities, and certification of service, the brief contains 4,219 words.

Counsel for the Appellant understands that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.   If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

/s/ Neal L. Walters
Neal L. Walters, Esq.
Counsel for Appellants

19

CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25, I hereby certify that I have this

14th day of March, 2016, electronically filed the required copies of the Appellant's

Reply Brief in the Clerk's Office of the United States Court of Appeals for the Fourth

Circuit using the Court's CM/ECF system which will send notification of such filing

to:

Richard D. Holzheimer, Jr.
Stephen P. Mulligan
Mark E. Shaffer
John D. Wilburn
MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, VA 22102

Brian D. Schmalzbach
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Counsel for Defendants-Appellees

Stuart A. Raphael
Trevor Stephen Cox
OFFICE OF THE ATTORNEY
GENERAL OF VIRGINIA
900 East Main Street
Richmond, VA 23219
Counsel for Intervenor/Defendant-Appellee

/s/ Neal L. Walters
Counsel for Appellants

20