Nos. 13-4625, 13-4626

# In the United States Court of Appeals for the Fourth Circuit

*In re:* UNDER SEAL

_____

UNITED STATES OF AMERICA,
*Plaintiff – Appellee*,

v.

UNDER SEAL 1; UNDER SEAL 2
*Parties-in-Interest – Appellants*.

On Appeal from the United States District Court
for the Eastern District of Virginia

**MOTION OF *AMICUS CURIAE* EMPEOPLED, LLC
FOR PERMISSION TO PARTICIPATE IN ORAL ARGUMENT**

> Richard M. Martinez
> Mahesha P. Subbaraman
> ROBINS, KAPLAN,
>   MILLER & CIRESI L.L.P.
> 2800 LaSalle Plaza
> 800 LaSalle Avenue
> Minneapolis, MN 55402-2015
> (612) 349-8500
> *Counsel for Amicus Curiae
> Empeopled, LLC*

# Certificate of Notification and Consent

Pursuant to 4th Cir. L.R. 27(a), counsel for *amicus curiae* Empeopled, LLC certifies that all parties in this case have been notified of this motion. In this regard, the parties' positions on this motion are as follows:

<u>Appellants</u>: Appellants take no position on this motion, but oppose any reduction in their argument time based on this motion. They do not intend to file a response unless the Court requests one.

<u>Government</u>: The Government opposes adding additional time to the 40 minutes scheduled by this Court and opposes this motion insofar as it seeks argument time independent of Appellant's time. The Government does not intend to file a response unless the Court requests one.

<u>Dated</u>:  December 18, 2013              s/ *Mahesha P. Subbaraman*

Richard M. Martinez
Mahesha Subbaraman
ROBINS, KAPLAN, MILLER &
    CIRESI, L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

Counsel for *Amicus Curiae*
Empeopled, LLC

# Introduction

In *United States v. Under Seal,* both Lavabit, LLC and its owner, Ladar Levison (collectively "Lavabit"), challenge court orders that allowed the Government to seize Lavabit's private encryption keys in order to gather evidence about a single user of Lavabit's secure e-mail service. As a result of this seizure, the Government ultimately became able to intercept the private communications of not just its investigative target but also every single one of Lavabit's other 400,000 users—none of whom was under investigation at the time or otherwise accused of wrongdoing.

On October 25, 2013, this Court accepted an *amicus curiae* brief from Empeopled, LLC ("Empeopled") that was filed in support of Lavabit with the consent of all parties to this case under Fed. R. App. P. 29(a).

Now, for the reasons set forth below, Empeopled respectfully seeks the Court's permission under Federal Rule of Appellate Procedure 29(g) to participate in oral argument in this case. In particular, Empeopled seeks 5 minutes of argument time, but Empeopled does not seek to intrude on Lavabit's argument time. Empeopled also assents to the Government being given further time for rebuttal if Empeopled's motion is granted.

1

## Argument

Empeopled respectfully seeks this Court's permission to participate in oral argument in *Under Seal* because Empeopled speaks for an important position that is not represented by the parties in this case.

This case turns on the validity of court orders letting the government seize Lavabit's private encryption keys and thereby intercept the private e-mails of Lavabit's over 400,000 users in the pursuit of a single user. In this regard, it appears these orders were issued without any First Amendment review of how they might chill either the efforts of online service providers to protect their users' privacy or the free speech and association of these users. *See* Appellant's Br. 2–10 (failing to mention any First Amendment review undertaken by the District Court); U.S. Br. 1-11 (same).

Yet, in their briefs on the validity of these orders, the parties say nothing about the First Amendment. *See* Appellant's Br. 11–29; Appellant's Reply Br. 1-26; U.S. Br. 11-47. The same goes for the other *amici* in this case. *See* ACLU Br. 1-30; EFF Br. 1-26. Instead, the parties and other *amici* confine their briefing to addressing the statutory and Fourth Amendment grounds for the Government's seizure of Lavabit's encryption keys.

2

Only Empeopled's brief addresses the chilling effect that the seizure of Lavabit's encryption keys entails and how this effect should guide the Court's review of this seizure. *See* Empeopled Br. 7-33. For this reason, Empeopled submits that its participation at argument in *Under Seal* would benefit the Court by providing an unambiguous defense of this view. *See United States v. Dickerson*, 166 F.3d 667, 680 n.14 (4th Cir. 1999) ("[F]ederal courts have frequently appointed *amici* to participate in oral argument where neither side will defend an important position.").

Empeopled recognizes that *amici* are rarely allowed to argue. But this case stands to affect how online service providers like Empeopled protect their users' privacy—and the resulting speech of these users—for years to come. Thus, given the vital role of oral argument in this Court, Empeopled hopes the Court will find for the following reasons that Empeopled's participation at oral argument in *Under Seal* will benefit the Court.

### 1.   Empeopled speaks for an important and unique position.

Empeopled believes that its participation at oral argument would assist the Court by giving voice to an important position that none of the parties or other *amici* address in this case: that the seizure of Lavabit's encryption keys calls for strict-scrutiny review given the chilling effect

3

exerted by this seizure on the First Amendment rights of both online service providers and their users. *See* Empeopled Br. 11-33; *cf.* Appellant's Br. 11–29; U.S. Br. 11-47. ACLU Br. 1-30; EFF Br. 1-26.

This Court has previously noted the importance and decisive nature of this position. For example, in *In re Grand Jury Subpoena: Subpoena Duces Tecum*, this Court reversed a district court's denial of a motion to quash "overly broad subpoenas duces tecum directed to material presumptively protected under the [F]irst [A]mendment." 829 F.2d 1291, 1299-1300 (4th Cir. 1987), *rehearing denied*, 844 F.2d 202, 203 (4th Cir. 1988). As this Court concluded: "When governmental searches trench on [F]irst [A]mendment concerns, courts have been careful to scrutinize the searches much more closely than the district court did in this case." *Id.* at 1300.

In the present case, it appears the District Court did not consider the First Amendment concerns trenched upon by the government's search of Lavabit's e-mail service—certainly not before ordering Lavabit to hand over encryption keys capable of unlocking the past, present, and future communications of Lavabit's over 400,000 users. By contrast, consider the careful balancing of First Amendment interests that the Western District of Wisconsin undertook in deciding whether to quash a grand jury subpoena

4

seeking information from online retailer Amazon about one of its users, Robert D'Angelo, "a prolific seller of used books on Amazon." *In re Grand Jury Subpoena to Amazon.com*, 246 F.R.D. 570, 571 (W.D. Wis. 2007).

D'Angelo was suspected of tax evasion and fraud via his "sale of about 24,000 used books" through Amazon's website. *Id.* at 571. The grand jury thus "directed Amazon to provide virtually all of its records regarding D'Angelo, including the identities of the thousands of customers who had bought used books from D'Angelo." *Id.* The government subsequently reduced this request "to the identification of 120 book buyers." *Id.* In the end, "Amazon willingly provided most of the requested information but it . . . refused to identify any book buyers to the government, citing the buyers' First Amendment right to maintain the privacy of their reading choices." *Id.* at 572. The government objected to this refusal. *See id.*

In turn, even though the district court noted "[t]he government does not suspect Amazon or D'Angelo's customers of any wrongdoing," the court explained its concern over the First Amendment:

> This [case] presents a legitimate First Amendment concern. The subpoena is troubling because it permits the government to peek into the reading habits of specific individuals without their prior knowledge or permission. True, neither the

5

> government nor the grand jury is directly interested in the actual titles or content of the books that people bought, and I have enormous trust in the prosecutors and agents handling this investigation, with whom this court has worked many times before. But it is an unsettling and un-American scenario to envision federal agents nosing through the reading lists of law-abiding citizens while hunting for evidence against somebody else.

*Id.* at 571-73. The court then noted that "if word were to spread over the Net—and it would—that the FBI and the IRS had demanded and received Amazon's list of customers and their personal purchases, the chilling effect on expressive e-commerce would frost keyboards across America." *Id.* at 573. Thus, recognizing that "rumors of an Orwellian federal criminal investigation into the reading habits of Amazon's customers could frighten countless potential [Amazon] customers into canceling planned online book purchases," the court held that "[t]his First Amendment concern is a factor for the court to consider when determining whether to require compliance with the subpoena as currently configured." *Id.*

Based on this concern, the court modified the subpoena. Finding that "the government is not entitled to unfettered access to the identities of even a small sample of . . . book buyers without each book buyer's permission," the court ordered the creation of "a filtering mechanism" that would invite

6

"volunteer witnesses from the enormous pool of customers who bought used books from D'Angelo." *Id.* at 573. The court also held that "[a]nyone who wishes not to participate in this exercise, by virtue of his or her silence, will be left alone." *Id.* at 573-74. The court accordingly struck a critical balance between the government's investigative needs and the valid First Amendment concerns of both Amazon and its customers.

The need for such balancing in the present case is no different—especially given the chilling effect that is inherent in the notion of mass interception of private e-mails by the government, regardless of whether these e-mails are being read by a government agent or a government computer.[1] *See* Empeopled Br. 21-24; *cf.* U.S. Br. 12, 43. The significance of this reality is not fully appreciable, however, unless the First Amendment concerns raised by this case are considered. Since none of the parties has briefed these concerns, however, the Court is without an effective advocate for this vital position at oral argument. Therefore, given this Court's prior

---

[1] A recent study published by the PEN American Center—a leading literary and human rights organization—in November 2013 reflects this point. *See* PEN AMERICAN CENTER, CHILLING EFFECTS: NSA SURVEILLANCE DRIVES U.S. WRITERS TO SELF-CENSOR (2013), http://www.pen.org/sites/default/files/Chilling%20Effects_PEN%20American.pdf.

7

observation that it is "benefitted by an adversary presentation of the issues," *Alitzer v. Deeds*, 191 F.3d 540, 543 n.7 (4th Cir. 1999), Empeopled respectfully submits that its participation at argument in this case would aid the Court under circumstances "where neither side [has] defend[ed] an important position" on appeal. *Dickerson*, 166 F.3d at 680 n.14.

### 2. Empeopled's position may still be heard at oral argument even if it was not considered by the District Court.

Empeopled recognizes this request to participate in oral argument rests on First Amendment concerns that the District Court likely did not consider. Nevertheless, since the general validity of the District Court's orders allowing the seizure of Lavabit's keys "is properly before the court," this Court "retains the independent power to identify and apply the proper law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991).

But should the Court credit any of the waiver-based arguments that the Government raises regarding the procedural posture of this case (*see* U.S. Br. 13-14), then Empeopled respectfully submits that this Court may still reach the important First Amendment position described herein as a matter of fundamental justice. As the Supreme Court has held: "There may always be exceptional cases or particular circumstances which will prompt

8

a[n] . . . appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court . . . below." *Hormel v. Helvering*, 312 U.S. 552, 557 (1941).

As such, there are at least four "particular circumstances" that favor review of the First Amendment concerns raised by Empeopled here. **First**, the Government's seizure of Lavabit's encryption keys affected the private communications of over 400,000 people and resulted in a chilling effect felt across the Internet. *See* Empeopled Br. 21-24. **Second,** the Government pursued its seizure of Lavabit's encryption keys in secret, effectively preventing Lavabit's law-abiding users from raising First Amendment challenges to the interception of their e-mails. *See id.* at 28-29. **Third**, for much of the proceedings below, Lavabit was acting *pro se* and thus lacked the benefit of legal counsel to raise a First Amendment challenge. *See* Appellant's Reply Br. 3-6. **Fourth**, at the very heart of this case is a technology—encryption—that is of vital First Amendment importance, as recent comments by Google chairman Eric Schmidt illustrate.[2]

---

[2]     *See* Chris Strohm, *Google's Schmidt Sees Encryption Killing Censorship*, BLOOMBERG, Nov. 20, 2013, http://www.bloomberg.com/news/2013-11-21/google-s-schmidt-sees-encryption-killing-censorship.html.

9

Based on these circumstances, this Court should reach Empeopled's First Amendment position. *See Wash. Gas Light Co. v. Va. Elec. & Power Co.*, 438 F.2d 248, 251 (4th Cir. 1971) ("[T]o reach the correct result, an appellate court may *sua sponte* consider points not presented to the district court and not even raised on appeal by any party."); *see also Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 144-45 (1967) (plurality opinion) (rejecting alleged waiver of First Amendment defense "where the ultimate effect of sustaining a claim of waiver might be an imposition on that valued freedom"); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1169 n.14 (9th Cir. 1977) (reaching First Amendment claim "never raised in the court below" where it "would affect . . . the standard of review").

## Conclusion

Empeopled raises an important First Amendment position in this case that would help the Court in deciding the validity of the encryption-key seizure at issue—a perspective that none of the parties or other *amici* advance in their briefing. For this reason, and based on the argument above, Empeopled respectfully seeks 5 minutes of time during the oral argument in *Under Seal* now scheduled for January 28, 2014.

                                                     Respectfully submitted,

<u>Dated</u>:  December 18, 2013                 s/  *Mahesha P. Subbaraman*

                                                     Richard M. Martinez
                                                     Mahesha P. Subbaraman
                                                     ROBINS, KAPLAN, MILLER &
                                                           CIRESI L.L.P.
                                                     2800 LaSalle Plaza
                                                     800 LaSalle Avenue
                                                     Minneapolis, MN 55402-2015
                                                     (612) 349-8500

                                                     Counsel for *Amicus Curiae*
                                                     Empeopled, LLC

# Certificate of Service

I hereby certify that on December 18, 2013, I electronically filed the foregoing document with the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. I further certify that all of the parties to this case or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system.

<u>Dated</u>:  December 18, 2013          s/ *Mahesha P. Subbaraman*

Richard M. Martinez
Mahesha Subbaraman
ROBINS, KAPLAN, MILLER &
  CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

Counsel for *Amicus Curiae*
Empeopled, LLC